## J. B. HATCHER v. JAMES DUNN, et al., Appellants.

**Oil Inspector:** DUTIES MINISTERIAL. The liability of an inspector
1 of illuminating oil, whose duties are prescribed by statute and
2 rules and regulations adopted in accordance with statutory provisions, for injuries caused by insufficient testing of oil, is statutory.

FALSE BRAND: *Error.* Falsely branding illuminating oil, for which
2 the statute makes the inspector both civilly and criminally liable,
3 involves intentional falsehood, and not mere error or unintentional wrong.

*Same.* An inspector of illuminating oil is not liable for injuries
2 caused by the use of oil which he erroneously marks as of a certain test, if he has used instruments furnished and approved by
3 the proper authorities, and which he had no reason to believe were not in good order, and which he used with due care in the manner prescribed by law, although by reason of their use he erroneously marked the temperature at which the oil would flash too high—although his duties are purely ministerial, and though the statute makes him liable for "culpable negligence."

DAMAGES: *Proximateness.* A state inspector of illuminating oil is not liable for damages caused by the explosion of oil which has been tested by him and marked to flash at a temperature which is erroneously stated too high, if the explosion was not the result of the erroneous marking, but resulted from the use of an unsafe lamp.

Evidence: ADMISSIBILITY OF CERTIFICATE: *Thermometer variations.* A certificate showing the variation of the scale of a thermometer from standard instruments, is properly admissible in evidence, together with the thermometer which it was made to accompany, in cases where the instrument itself is properly admissible.

*Appeal from Linn District Court.*—HON. J. H. PRESTON, Judge.

MONDAY, MAY 24, 1897.

ACTION at law to recover of the late state inspector of oils, one of his deputies, and the sureties on their official bonds, for damages alleged to have been caused by the failure of the deputy to perform the duties of his office as required by law. There was a trial by jury, and a verdict and judgment for the plaintiff. The defendants appeal.—*Reversed.*

*Charles A. Clark* and *John M. Redmond* for appellants.

*Wheeler & Moffit, Smith & Son,* and *J. W. Jamison* for appellee.

ROBINSON, J.—In the years 1891 and 1892 the defendant Dunn was state inspector of oils, and the defendant Martin P. Healy was his deputy at Cedar Rapids. Each had given an official bond as required by law. On the twenty-fourth day of December, 1891, Healy inspected a quantity of oil at Cedar Rapids, and marked the barrels which contained it:

"Approved; flash test, one hundred and six degrees. Cedar Rapids, Iowa, December 24, 1891.

M. P. Healy, Deputy Oil Inspector."

Eight barrels of the oil so marked were sold to a merchant in Tipton, and he sold a small quantity of it to the plaintiff, a veterinary surgeon, who used it in his barn for illuminating purposes. In the evening of the last day of the month, a lamp in which the oil was being used exploded, and the results were that the plaintiff was seriously burned, and his barn, several horses and other property were destroyed. The plaintiff alleges that the sole cause of the explosion and fire and resulting damages was that the oil so inspected and sold was not equal to the standard required by law, and that the brand placed upon the barrels which contained it was false and fraudulent. On the former submission of this cause an opinion was filed, but a petition for a re-hearing was presented and sustained, and the cause is again submitted for our determination.

Chapter 185, Acts Twentieth General Assembly, as amended by chapter 149, Acts Twenty-first General Assembly, was in force at the time of the transaction in question. Under the provisions of those acts, it was made the duty of the state inspector and his deputies to provide themselves, at their own expense, with the necessary instruments and apparatus for testing the quality of illuminating oils manufactured from petroleum. If oil met the requirements of the law, the words, "Approved; flash test, —— degrees" (inserting the number of degrees), with the date, over the official signature of the officer making the inspection, were to be branded upon the package, barrel, or cask which contained the oil. If the oil tested did not meet the legal requirements, it was to be branded in a similar manner, "Rejected for illuminating purposes; flash test, —— degrees" (inserting the number of degrees); and it was made unlawful to sell rejected

oil for illuminating purposes. All oils which would emit a combustible vapor at a temperature of one hundred and five degrees, standard Fahrenheit thermometer, closed test, were to be rejected for illuminating purposes. The oil tester adopted and recommended by the state board of health was to be used, and it was made the duty of that board to provide the necessary rules and regulations for the inspection of illuminating oils, and for the government of the inspector and his deputies, which were to be approved by the governor, and be binding upon the inspector and his deputies. The inspector was required to give an official bond, conditioned for the faithful performance of the duties imposed upon him, which was to be for the use of all persons aggrieved by the acts of the inspector or his deputies; and each deputy was required to give a bond with like conditions, and for like purposes. Section 11 of chapter 185, specified, contains the following: "If any inspector or deputy shall falsely brand or mark any barrel, cask or package, or be guilty of any fraud, deceit, misconduct or culpable negligence in the discharge of his official duties,   *   *   *   he shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not exceeding one hundred dollars, or imprisoned not exceeding thirty days, and be liable to the party injured for all damages resulting therefrom."

I. It is the theory of the appellants that the liability of the state inspector and his deputies is wholly statutory, and that there is no liability for erroneous branding unless it was known to the officer who made it to be incorrect, or unless he was guilty of culpable negligence in making it. The appellee contends that there is both a common law and statutory liability, and that the defendants are liable for an erroneous branding whether the error

was known to the inspecting officer, or was the result
of culpable negligence on his part, or not.   The court
refused to give instructions asked by the appellants in
accordance with their theory, and charged the jury, in
effect, that the defendants were liable for approving
the oil in question, if, upon a closed test, it emitted a
combustible vapor at a temperature of one hundred
and five degrees or less, standard Fahrenheit thermom-
eter, without regard to the knowledge or negligence of
the officer who made the inspection.  The liability of the
defendants, if any, is statutory.   The duties of the
inspector and his deputies are prescribed by statute,
and by rules and regulations adopted by virtue of the
statute; and the obligation of their sureties is ascer-
tained from the statute, the rules and regulations
adopted pursuant thereto, and the conditions of the
bonds they have signed.   It is unnecessary, therefore,
to discuss any question of common law liability.   See
*Scotten v. Fegan,* 62 Iowa, 236 (17 N. W. Rep. 491).   It
is important to determine the meaning which should
be attached to the word "falsely," as used in the stat-
ute.   Does it mean inaccurate, erroneous, or faulty,
merely, or does it include the thought of intentional
wrong?   It is true that a false branding may be said
to be inaccurate, erroneous, faulty; but the word
"false" usually includes, not only the element of error,
but also of intentional wrong.   It is said in 7 Am. &
Eng. Enc. Law, 661, that "this word means something
more than untrue; it means something designedly
untrue, deceitful, and implies an intention to perpetrate
some treachery or fraud."   See, also, *Putnam v.
Osgood,* 51 N. H. 192, 206; *State v. Smith,* 63 Vt. 201
(22 Atl. Rep. 604); *Clapp v. Association,* 146 Mass. 519
(16 N. E. Rep. 436); *Mason v. Association,* 18 U. C. C. P.
19; *Insurance Co. v. Culver,* 6 Ind. 137; *Cohn v. Neeves,*
40 Wis. 393.   See, also, *State v. Brady,* 100 Iowa, 191
(69 N. W. Rep. 293).   The statute under consideration

makes the officer who violates its provisions liable both civilly and criminally upon precisely the same state of facts, and is therefore a penal statute, to be strictly construed. *Hanks v. Brown*, 79 Iowa, 563 (44 N. W. Rep. 811), and cases therein cited; Sutherland, St. Const., sections 208, 371. Statutes are sometimes enacted which prohibit acts, not because of any moral wrong involved in them, nor of any criminal intent with which they are committed, but from considerations of public policy; and persons are required to know the facts and obey the law, at the peril of punishment for disobedience, without regard to actual knowledge or wrongful intent. That is true of many fiscal, police, and other regulations. *Commonwealth v. Weiss*, 139 Pa. St. 247 (21 Atl. Rep. 10); *Commonwealth v. Raymond*, 97 Mass. 568; 3 Greenleaf, Ev., section 21; 1 Wharton, Cr. Law, section 88. But it is the general rule that a guilty intent is essential to the commission of a crime, and we are of the opinion that there is nothing in the language of the statute under consideration, even when construed with reference to the demands of public policy, which makes necessary the conclusion that an officer may, without intentional wrong or culpable negligence on his part, subject himself to penalties for which it provides. The injustice which might be done if this were not true is shown by the record in this case. The deputy who inspected the oil testified that the inspection was made according to the statute and the rules prescribed by the state board of health, with a thermometer which that board had furnished him, and that the oil flashed at a temperature of one hundred and six degrees. An experiment made after the fire, by an officer of the state board of health, with the instruments which were kept by that board, tended to show that the inspection was correct. Other experiments made in Tipton tended to show that the

oil flashed at a temperature of one hundred and four degrees. The evidence also shows that each thermometer differs in some respects from every other. Great care is taken by the state board of health to procure and furnish to the inspectors as reliable thermometers as can be obtained, but it seems to be true that absolute uniformity of results, from the best thermometers and apparatus to be had, cannot be secured. If the inspecting officer uses instruments which have been approved and furnished by the state board of health, and which he has no sufficient reason to believe may not be in good order, and if they are used with due care, in the manner required by law and the rules of such board, and if he correctly brand the oil inspected, according to the results shown by the test, he is not liable for an error which may have occurred. And this is true upon the hypothesis that the state inspector and his deputies act in a ministerial, and not in a judicial capacity, in testing oils. Mechem, Pub. Off., sections 661, 677, 579; Throop, Pub. Off., sections 567, 726. The cases decided by this court upon which the plaintiff relies as sustaining a different conclusion are based upon different conditions, involving the application of different principles. The cases of *District Township v. Smith*, 39 Iowa, 10, and *District Township v. Morton*, 37 Iowa, 550, involved the obligation created by official bonds for the unconditional holding of and accounting for public money. The case of *Holmes v. Blyler*, 80 Iowa, 366 (45 N. W. Rep. 756), involved the liability of an officer for serving judicial process, and was governed by well-established rules of special application to such cases. In the case of *Bank v. Clements*, 87 Iowa, 542 (54 N. W. Rep. 197), we held that a county recorder who failed to index an instrument, which had been filed in his office for record, for several hours after he might have indexed it without

requiring assistance, and without working more than the usual number of hours, was guilty of negligence, not that he was absolutely liable for a failure to index the instrument when it was filed. The bonds upon which this action is founded required the state inspector and his deputy to faithfully perform their duties, and that, as we have seen, may have been done, even though, notwithstanding due care on their part, there was error in their work. Hence, the portion of the charge under consideration was erroneous.

II. The fourth paragraph of the charge to the jury was also erroneous, in that the defendants were made liable for the damages caused by the fire in question if the oil in controversy emitted a combustible vapor at a temperature of one hundred and five degrees or less, standard Fahrenheit thermometer, closed test, even though the explosion of the lamp was not due to the inferior grade of the oil. It is not true that an explosion necessarily follows the use of oil for illuminating purposes which is below the grade required by the statute, and the defendants are not liable if the explosion in question was not in any respect due to the fact that the oil was below that grade. The plaintiff claims that other portions of the charge cured the error in the fourth paragraph, but we do not think that is true. The explicit statements of liability made in that paragraph were of a character to outweigh general statements made elsewhere in the charge.

III. The appellants complain of the admission in evidence of a certificate which purported to be signed by "Robert Brown, Secretary." The facts involved in its admission were substantially as follows: The thermometers used by the state oil inspector and his deputies are furnished by the state board of health. They are made in Germany, of the

most perfect glass known to scientists for such use, and are sent to the observatory of Yale College to be scientifically calibrated. The errors in the marking of the scale are there ascertained by a comparison with the standard instruments of the observatory, and are recorded in a certificate which bears the number of the thermometer, and is designed to be kept and used with it. In using the thermometer, the variation indicated by the certificate is added to or deducted from the degree of temperature shown by the thermometer. The certificate is thus virtually a part of the instrument, and necessary to enable the person using it to obtain correct results. A thermometer used in making some of the tests upon which the plaintiff relied had been calibrated at the Yale observatory, and was introduced in evidence. The certificate in question was the one which belonged with that thermometer, and we do not understand that objection to the thermometer as evidence was made. The certificate was properly admitted with it.

The views we have expressed dispose of the material questions presented in argument. For the errors shown, the judgment of the district court is REVERSED.