WILLIAMS v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 13, 1899.)

No. 452.

1. JURORS—QUALIFICATIONS—OPINIONS—REVIEW OF TRIAL COURT.
    A juror had discussed the case with a former attorney of defendant, with whom he was intimately acquainted, and became prejudiced against defendant. Although he said he did not have a fixed opinion as to defendant's guilt, he stated that his mind was "strongly colored" in the matter, and that his prejudice was so strong that it would require evidence to remove it, and would perhaps, in some degree, shape his convictions or judgment; and, in reply to a question whether he could return a verdict solely on the evidence, he said: "I am not infallible. * * * I think I would. I feel that I might." Held, that it was error to overrule a challenge for bias.

2. EXTORTION—INDICTMENT AND PROOF—VARIANCE.
    An indictment alleging that money was extorted from one person is not at variance with evidence that, when the extorsive demand was made on such person, he obtained the money from another, in defendant's presence, and then handed it to defendant.

    Gilbert, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Northern District of California.

Geo. D. Collins, for plaintiff in error.

Henry S. Foote and Bert Schlessinger, Asst. U. S. Atty.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge. Against the defendant below (the plaintiff in error here), Richard S. Williams, two indictments, numbered, respectively, 3,267 and 3,268, were returned in the district court of the United States for the Northern district of California; each indictment containing two counts. The cases were consolidated and tried together, resulting in a verdict of guilty in each case. The accused interposed a motion in arrest of judgment on the second count of

each indictment, and also moved for a new trial in each case. The first motion was sustained by the trial court, and, the motion for a new trial having been overruled, judgment was entered against the defendant on the first count of each indictment, from which judgment an appeal was taken to the supreme court, where the judgment was reversed and the case remanded for a new trial. 168 U. S. 382, 18 Sup. Ct. 92. Upon the retrial in the district court upon the first count in each indictment, a verdict was returned finding the defendant not guilty as charged in indictment numbered 3,268, and guilty as charged in the first count of indictment numbered 3,267, on which verdict he was sentenced by the court below under the first count of the last-mentioned indictment. On the present appeal, therefore, we have only to consider the first count of that indictment, by which it was, in substance, charged that the plaintiff in error, an officer of the treasury department, duly appointed and acting under authority of the laws of the United States, and designated as Chinese inspector of the port of San Francisco, and by virtue of his office being authorized, directed, and required to aid and assist the collector of customs of that port in the enforcement of the various laws and regulations relating to the coming of Chinese persons and persons of Chinese descent from foreign ports to the United States—

"Did then and there, as such officer, willfully, knowingly, corruptly, and feloniously, for the sake of gain, and contrary to the duty of his said office, and by color thereof, ask, demand, receive, extort, and take of one Wong Sam, a Chinese person, a certain sum of money, to wit, one hundred dollars, which said sum of money was not due to him, the said Richard S. Williams, and which the said Richard S. Williams was not then and there, or at all, by virtue of his said office, entitled to ask, demand, receive, or take of said Wong Sam, or any other person. That is to say, that on the 31st day of August in the year of our Lord 1895 there arrived at the port of San Francisco aforesaid, from a foreign port or place, to wit, the port of Hongkong, in the empire of China, a male person, of Chinese descent, to wit, one Wong Lin Choy, who claimed to the collector of customs that he was entitled to land, be, and remain in the United States, on the ground that he was a native born of said United States; that thereafter, * * * on the 18th day of September in the year of our Lord 1895, at said city and county of San Francisco, state and Northern district of California, the said Richard S. Williams corruptly and extorsively, for the sake of gain, and contrary to the duty of his said office, and under color thereof, did extort, receive, and take of said Wong Sam, who was then and there interested in the application of claim of said Wong Lin Choy as aforesaid, a sum of money, to wit, the sum of one hundred dollars, as aforesaid; the said Richard S. Williams, under color of his said office, having previously, to wit, on the 31st day of August in the year of our Lord 1895, at said city and county, state and district, aforesaid, feloniously and corruptly obtained and exacted a promise from said Wong Sam for the payment thereof by him to him, the said Richard S. Williams, by then and there falsely and corruptly representing to the said Wong Sam that without the payment thereof to him, the said Richard S. Williams, the said Wong Lin Choy would not be permitted to land at said port, be or remain within the United States, but would be returned to said foreign port whence he came,—against the peace and dignity," etc.

The first point relied upon by the appellant, and in respect to which error is assigned, relates to the ruling of the court below in respect to the qualifications of one Elliott to serve as a juror. He was examined on his voir dire as to his qualifications. The bill of exceptions states that in response to a question put to him by the

United States attorney, as to whether he knew anything of the case, Elliott answered that "he had discussed the case with one Lyman Mowry, at one time the attorney of said defendant in said action, that he was intimately acquainted with said Mowry, and that, as the result of said discussion, he (said Elliott) was prejudiced in the case." The bill of exceptions proceeds:

"Said Elliott further stated: 'I have not a fixed opinion as to the guilt or innocence of the defendant, but my mind is colored, and perhaps, in some degree, it would shape my convictions or judgment. It is strongly colored in the matter.' That thereupon counsel for the defendant asked said Elliott whether his (said Elliott's) said prejudice was so strong that it would require evidence to remove it, and said Elliott answered that it was of that strength, and that it would require evidence to remove it. That defendant challenged said Elliott upon the ground that he was biased and prejudiced. The prosecution joined issue on said challenge. The court then asked the following question of the juror, viz.: 'The Court. Q. Do you think you will be able to sit as a juror, and return a verdict based solely upon the evidence that you would hear?' To which said Elliott answered: 'A. I am not infallible. From what I said, I think I would. I think I possess a natural sense of justice. I think I would. I feel that I might.'"

The court below overruled the challenge, to which ruling the defendant duly excepted, and Elliott was sworn, and served as a juror; prior to which the defendant had exhausted all of his peremptory challenges.

We are of opinion that Elliott was not an impartial juror. No one, we apprehend, will deny that the accused was entitled to an impartial jury. That right was not only secured to him by the sixth amendment of the constitution of the United States, but is recognized by every court of justice. It is entirely true that mere hypothetical opinions, expressed or unexpressed, derived from public rumor, statements in public journals, common notoriety, and other like sources, do not disqualify a juror, when it is made to appear that notwithstanding such opinions he can and will be governed in his actions in the case entirely by the evidence that may be introduced upon the trial. All authorities concede, said the supreme court in Reynolds v. U. S., 98 U. S. 145, 155, "that, if hypothetical only, the partiality is not so manifest as to necessarily set the juror aside." The court then quotes the rule as stated by Mr. Chief Justice Marshall in Burr's Trial, 1 Burr's Tr. 416, Fed. Cas. No. 14,692g, that:

"Light impressions, which may fairly be presumed to yield to the testimony that may be offered, which may leave the mind open to a fair consideration of the testimony, constitute no sufficient objection to a juror; but those strong and deep impressions which close the mind against the testimony that may be offered in opposition to them, which will combat that testimony and resist its force, do constitute a sufficient objection to him."

The supreme court, in the Reynolds Case, then proceeds:

"The theory of the law is that a juror who has formed an opinion cannot be impartial. Every opinion which he may entertain need not necessarily have that effect. In these days of newspaper enterprise and universal education, every case of public interest is almost, as a matter of necessity, brought to the attention of all the intelligent people in a vicinity; and scarcely any one can be found among those best fitted for jurors who has not read or heard of it, and who has not some impression or some opinion in respect to its merits. It is clear, therefore, that, upon the trial of the issue of fact raised by a challenge for such cause, the court will practically be called upon to determine

whether the nature and strength of the opinion formed are such as in law nec-essarily to raise the presumption of partiality. The question thus presented is one of mixed law and fact, and to be tried, as far as the facts are con-cerned, like any other issue of that character, upon the evidence. The find-ing of the trial court upon that issue ought not to be set aside by a reviewing court unless the error is manifest. No less stringent rules should be applied by the reviewing court in such a case than those which govern in the con-sideration of motions for new trial because the verdict is against the evidence. It must be made clearly to appear that by the evidence the court ought to have found the juror had formed such an opinion that he could not in law be deemed impartial. The case must be one in which it is manifest the law left nothing to the 'conscience or discretion' of the court."

The rule thus declared by the supreme court has been subsequently adhered to. Hopt v. Utah, 120 U. S. 430, 7 Sup. Ct. 614; Spies v. Illinois, 123 U. S. 132, 8 Sup. Ct. 21.

Now, turning to the examination of the juror Elliott, it is seen that he had previously discussed the case with the former attorney of the defendant thereto, with whom he was intimately acquainted, and from that discussion he became prejudiced, which prejudice is shown by his answer to the question asked by the court to have been against the defendant. And, although the juror stated that he had not a "fixed opinion" as to the guilt or innocence of the defendant, he stated that his mind was "strongly colored" in the matter, and that his prejudice was so strong that it would require evidence to remove it, and that perhaps, in some degree, it would shape his convictions or judgment. Surely, a mind so affected cannot be properly said to be open to a fair consideration of such evidence as should be given, or to be in such condition as to be fairly presumed to yield, without any resistance, to the force of the evidence. And that the juror himself did not feel certain that the strong prejudice he entertained could be overcome by the evidence plainly appears, we think, not only from his statement that it would perhaps, in some degree, shape his convictions or judgment, but from his answer to the question of the court, in which he was asked whether he thought he would be able to sit as a juror, and return a verdict based solely upon the evidence he would hear; his answer being:

"I am not infallible. From what I said, I think I would. I think I pos-sess a natural sense of justice. I think I would. I feel that I might."

Certainly, this answer also indicated a decided doubt in the mind of the juror whether he would be able to disregard the strong preju-dice he derived from his discussion of the case with the defend-ant's former attorney therein, and be controlled solely by the evi-dence introduced on the trial. The law does not and cannot deem such a juror impartial. Every defendant in every criminal case is by the law presumed to be innocent until his guilt is established by proof beyond a reasonable doubt, and to the benefit of that rea-sonable doubt the defendant is entitled from the beginning to the end of the trial; and it applies as well to the examination of jurors as to any other step in the trial. In Wright's Case, 32 Grat. 941, the court said:

"The jury must be able to give the accused a fair and impartial trial. Upon this point nothing should be left to inference or doubt. All the tests ap-plied by the courts, all the inquiries made into the state of the jurors' feelings,

are simply with a view of securing a tribunal competent to receive and weigh the evidence, and render a verdict accordingly, unimpaired by prejudice or preconceived opinions. If there is a reasonable doubt of whether the juror comes up to the standard, that doubt should be resolved in favor of the accused."

In Holt v. People, 13 Mich. 224, Judge Cooley said that in criminal cases, wherein, after full examination, the testimony given upon a challenge leaves a reasonable doubt of the impartiality of the juror, the defendant should be given the benefit of the doubt.

In People v. McQuade, 110 N. Y. 300, 18 N. E. 162, the court of appeals of that state, speaking of the statutory modification of the common-law rule, said:

"There has been no change of the fundamental rule that an accused person is to be tried by a fair and impartial jury. Formerly the fact that a juror had formed and expressed an opinion touching the guilt or innocence of a person accused of crime was in law a disqualification; and, although he expressed an opinion that he could hear and decide the case upon the evidence produced, this did not render him competent. * * * Now, as formerly, an existing opinion, by a person called as a juror, of the guilt or innocence of a defendant charged with crime, is prima facie a disqualification; but it is not now, as before, a conclusive objection, provided the juror makes the declaration specified (that he believes that such opinion or impression will not influence his verdict, and he can render an impartial verdict according to the evidence), and the court, as judge of the fact, is satisfied that such opinion will not influence his action. But the declaration must be unequivocal. It does not satisfy the requirement, if the declaration is qualified or conditional. It is not enough to be able to point to detached language, which, alone construed, would seem to meet the statutory requirement, if, on construing the whole declaration together, it is apparent the juror is not able to express an absolute belief that his opinion will not influence his verdict."

In State v. McClear, 11 Nev. 39, 67, Hawley, C. J., in concluding a well-considered opinion, said:

"When not regulated by statutory provisions, we think that whenever the opinion of the juror has been formed upon hearing the evidence at a former trial, or at the preliminary examination before a committing magistrate, or from any cause has been so deliberately entertained that it has become a fixed and settled belief of the prisoner's guilt or innocence, it would be wrong to receive him. In either event, in deciding these questions, courts should ever remember that the infirmities of human nature are such that opinions once deliberately formed and expressed cannot easily be erased, and that prejudices openly avowed cannot readily be eradicated from the mind. Hence, whenever it appears to the satisfaction of the court that the bias of the juror, actual or implied, is so strong that it cannot easily be shaken off, neither the prisoner nor the state ought to be subjected to the chance of conviction or acquittal it necessarily begets. But whenever the court is satisfied that the opinions of the juror were founded on newspaper reports and casual conversations, which the juror feels conscious he can readily dismiss, and where he has no deliberate and fixed opinion, or personal prejudice or bias, in favor of or against the defendant, he ought not to be excluded. The sum and substance of this whole question is that a juror must come to the trial with a mind uncommitted, and be prepared to weigh the evidence in impartial scales, and a true verdict render according to the law and the evidence."

See, also, People v. Wells, 100 Cal. 227, 34 Pac. 718; People v. Casey, 96 N. Y. 122; Stephens v. People, 38 Mich. 739; Smith v. Eames, 36 Am. Dec. 515, and cases cited in note thereto.

One other point made on behalf of the appellant it is necessary to decide, as, if it should be sustained, it would, in view of the evidence,

in the case, be useless to direct a new trial. That point is that there is a fatal variance between the proof on the part of the prosecution and the allegations of the indictment. It is contended in support of this point that the proof shows that the money was extorted by the defendant, if at all, not from Wong Sam, as alleged, but from one Chin Deock; and this, upon the ground that the money really came from Chin Deock, although the defendant dealt in the unlawful and criminal transaction with Wong Sam, and received the money from him. Both Wong Sam and Chin Deock were witnesses on the trial, and, according to their testimony, it was at the request of the latter that Wong Sam agreed to pay the defendant $100 for securing the landing of Wong Lin Choy, and that, when the defendant came to Wong Sam for the $100, the latter sent for Chin Deock, who brought the money, and, in the presence of the defendant, handed it to Wong Sam, who, in turn, handed it to the defendant, after trying to induce him, without avail, to accept $90. We do not think the circumstance that Wong Sam got the money that he paid the defendant from Chin Deock of any importance. The transaction constituting the crime, according to the evidence, was between the defendant and Wong Sam. The defendant, so far as appears, did not know Chin Deock, in the matter, at all, and had nothing to do with him. It was from Wong Sam that he demanded $100 for procuring the landing of Wong Lin Choy, and from Wong Sam that he received the money. This is in accordance with the averments of the indictment, and there was no variance.

It is not necessary to consider any other assignment of error, as they all relate to the rulings of the court below, which, if in any respect erroneous, can be readily corrected on the new trial which must follow for the reason first stated herein. Judgment reversed and cause remanded for a new trial.

GILBERT, Circuit Judge (dissenting). The examination of the juror on his voir dire, as set forth in the bill of exceptions, is chiefly presented in narrative form. We have not before us the questions which he answered; nor have we the benefit, which the trial court had, of noting his demeanor, his appearance, or the tones of his voice. Nor does the bill of exceptions state that all of his examination is embodied therein. The certificate is that it contains all the evidence necessary to explain the exceptions. But, assuming that the record contains substantially all that the juror testified, is the decision of the trial court, overruling the challenge to the juror, ground for now reversing the judgment?

By section 819 of the Revised Statutes it is provided that all challenges for cause or favor shall be tried by the court. In construing this provision, the United States courts, upon writ of error, have uniformly deferred to the decision of the trial court, and have exercised their power to set aside its decision with hesitancy. In Reynolds v. U. S., 98 U. S. 156, Chief Justice Waite said:

"The question thus presented is one of mixed law and fact, and to be tried, as far as the facts are concerned, like any other issue of that character, upon the evidence. The finding of the trial court upon that issue ought not to be set

aside by a reviewing court, unless the error is manifest. No less stringent rules should be applied by the reviewing court in such a case than those which govern in the consideration of motions for new trial because the verdict is against the evidence. It must be made clearly 'to appear that upon the evidence the court ought to have found the juror had formed such an opinion that he could not in law be deemed impartial. The case must be one in which it is manifest the law left nothing to the 'conscience or discretion' of the court."

In Hopt v. Utah, 120 U. S. 435, 7 Sup. Ct. 616, where a juror had formed an opinion, but stated under oath that notwithstanding such opinion he could and would act impartially and freely, the court said:

"The judgment of the court upon the competency of the juror in such cases is conclusive."

In Spies v. Illinois, 123 U. S. 179, 8 Sup. Ct. 30, the language from Reynolds' Case, above quoted, was repeated, with the approval of the court.

In Publishing Co. v. McDonald, 19 C. C. A. 517, 73 Fed. 442, the circuit court of appeals for the Second circuit said:

"But it must be remembered that the question before the trial judge, although one of mixed law and fact, is, in the main, a question of fact, and that, while he may be sometimes wrongly influenced by a desire to expedite the trial or by impatience of delays, yet, if his mind is undisturbed, the impression which the juror makes, of his intelligence, fairness, and evenness of mind, from a personal inspection of him, and the belief, in regard to his probable character, which is created by his appearance under examination, his bearing, and willingness to disclose the nature and extent of his preconceived opinions, are valuable, and have deserved weight before an appellate court; and therefore the finding of fact by the trial court will not be set aside, except for manifest error."

Turning to the decisions of the supreme court of California, we find that a similar view of the conclusiveness of the ruling of the trial court has been entertained by that court. In Trenor v. Railroad Co., 50 Cal. 230, Rhodes, J., said:

"And we are inclined to the opinion, though we do not expressly so hold, that the decision is final, and not subject to review either on motion for a new trial or on appeal. But, however that may be, if the decision is subject to review, it is only on the ground that the evidence is insufficient to sustain it. This court would not, except in the clearest case, interfere with the decision, for the determination of the court below is based more largely than in ordinary questions in litigation upon the bearing, manner, appearance, etc., of the juror while giving his testimony."

In People v. Wells, 100 Cal. 229, 34 Pac. 719, referring to section 1073 of the Penal Code which defines actual bias to be "the existence of a state of mind on the part of the juror in reference to the case or to either of the parties, which will prevent him from acting with entire impartiality, and without prejudice to the substantial rights of either party," the court said:

"Whether the state of mind of the juror is such as to constitute actual bias, within the above definition, is a question of fact, to be determined by the court. * * * The court's decision upon these points, when the evidence disclosed upon the examination of the juror is susceptible of different constructions, is to be regarded on appeal like its determination of any other question of fact resting upon the weight or construction of evidence."

In People v. Fredericks, 106 Cal. 559, 39 Pac. 945, the court said:

"This court is only allowed to review an order denying a challenge to a juror upon the ground of actual bias when the evidence upon the examination

of the juror is so opposed to the decision of the trial court that the question becomes one of law, for it is only upon questions of law that this court has appellate jurisdiction. * * * The evidence of each juror was contradictory in itself. It was subject to more than one construction. A finding by the court either way upon the challenge would have support in the evidence, and under such circumstances the trial court is the final arbiter of the question; for under such conditions the question presented to this court by the appeal is one of fact, and our power to hear and determine is limited to appeals upon questions of law alone."

Guided by the principles announced in the foregoing decisions, both of the courts of the United States and of California, I think the finding of the trial court in this case upon the question of the competency of the juror is conclusive. Conceding that the juror's evidence appears contradictory, and that there are portions of it which would lead to a contrary conclusion, it must be borne in mind that it is not our province to weigh the evidence, and to say whether or not the trial court should have found differently upon the facts. The only question for us to consider is whether there was evidence to support the finding. The record shows that there was. When asked if he would sit as a juror, and render a verdict based solely upon the evidence, he answered: "I think I would. I feel that I might." The force of these words would, it is true, largely depend upon the manner and tones in which they were uttered. They might be said in a hesitating, doubting manner, such as to convey the impression that the speaker himself distrusted his ability to divest himself of his bias; and, upon the other hand, they might be expressed with such earnestness and sincerity as to carry to the court the conviction that notwithstanding his bias the juror could and would act impartially. The trial court had a better opportunity than have we to judge of the effect and the credibility of that testimony, and he had the right to trust and act upon it. In so doing, he exercised a discretion which was vested in him by the statute; and his finding upor the facts is not, I think, subject to our review.