[S. F. No. 2571. Department Two.—September 21, 1903.]

## ANTHONY QUILL, Appellant, v. SOUTHERN PACIFIC COMPANY, Respondent.

ACTION FOR DEATH—NEGLIGENCE—TRIAL—CHALLENGE TO JURORS FOR BIAS.—In an action by a father to recover damages for alleged negligence of the defendant railroad company in causing the death of his minor child, it was error for the court to overrule his challenge to jurors for actual bias shown generally against suits for damages for negligence. The right to unbiased and unprejudiced jurors is an inalienable part of the right of trial by jury, guaranteed by the constitution.

ID.—INSTRUCTION—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.—An instruction that in order to hold the defendant liable and entitle the plaintiff to recover it must appear to the satisfaction of the jury that the deceased was without fault is not to be construed as shifting the burden of proof, and telling the jury that the plaintiff must establish lack of contributory negligence. Though the instruction may well be made more specific, it is to be considered as amounting only to a declaration to the jurors that even if they found defendant negligent, still plaintiff could not recover if the deceased herself had been guilty of contributory negligence.

ID.—CONTRIBUTORY NEGLIGENCE OF MINOR.—The same act which would be negligence in an adult may not be such if done by a child; but a child is required to exercise the same degree of care that would be expected from children of the same age, or which children of that age ordinarily exercise. The law imposes upon minors the duty of giving such attention to their surroundings and care to avoid danger as may be fairly and reasonably expected from persons of their age and capacity.

ID.—MEASURE OF DAMAGES—DEATH OF MINOR DAUGHTER—LOSS OF COMFORT AND SOCIETY—SERVICE—PROTECTION AND SUPPORT.—In determining the measure of damages in an action by a father for the death of his minor daughter, the loss of the comfort and society of the deceased should not be limited to the minority or marriage of the daughter; but, independently of the probable value of the services of the daughter during minority or until marriage, nothing further should be allowed for "protection and support" of the parent by the daughter.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. William R. Daingerfield, Judge.

The facts are stated in the opinion of the court.

Sullivan & Sullivan, for Appellant.

The court erred in overruling the challenges for actual bias. (*People* v. *Reyes,* 5 Cal. 349; *People* v. *Gehr,* 8 Cal. 359; *People* v. *Weil,* 40 Cal. 268; *MacDougall* v. *Central R. R. Co.,* 63 Cal. 431; *Lawlor* v. *Linforth,* 72 Cal. 205; *People* v. *Wells,* 100 Cal. 227; *Lombardi* v. *California-St. Ry. Co.,* 124 Cal. 313; *People* v. *Miller,* 125 Cal. 44; *Williams* v. *United States,* 93 Fed. 396; *Hopt* v. *Utah,* 120 U. S. 430; *Spies* v. *Illinois,* 123 U. S. 132; *Wright's Case,* 32 Gratt. 941; *Holt* v. *People,* 13 Mich. 224; *People* v. *McQuaide,* 110 N. Y. 300; *State* v. *McClear,* 11 Nev. 36, 37; *People* v. *Casey,* 96 N. Y. 122; *Stephens* v. *People,* 38 Mich. 739; *Smith* v. *Eames,* 3 Scam. 76.[1]) The court should not have implied by its instruction the burden of proof was on the plaintiff to show a want of contributory negligence. (*McCurrie* v. *Southern Pacific Co.,* 122 Cal. 561; *Babcock* v. *Los Angeles etc. Co.,* 128 Cal. 178; *Green* v. *Pacific Lumber Co.,* 130 Cal. 440; *Bosqui* v. *Sutro Railroad,* 131 Cal. 400; *Schneider* v. *Market-St. Ry. Co.,* 134 Cal. 487.) The court erred in treating the negligence of a minor the same as that of an adult. (*Studer* v. *Southern Pacific Co.,* 121 Cal. 400;[2] *George* v. *Los Angeles Ry. Co.,* 126 Cal. 362;[3] *O'Connor* v. *Golden Gate etc. Mfg. Co.,* 135 Cal. 537; *Foley* v. *California Horseshoe Co.,* 115 Cal. 184, 192, 193;[4] *Union Ry. Co.* v. *McDonald,* 152 U. S. 262-281; *Railroad Co.* v. *Gladmon,* 15 Wall. 401-406; *Railroad Co.* v. *Stout,* 17 Wall. 657; *Wright* v. *Detroit G. R.,* 42 Am. & Eng. R. R. Cas. 140; *Swift* v. *Stadt R. U.,* 45 Eng. & Am. R. R. Cas. 180.) Where instructions are contradictory the judgment cannot stand. (*McCreery* v. *Everding,* 44 Cal. 246; *Sappenfield* v. *Main-St. etc. Ry. Co.,* 91 Cal. 48; *Haight* v. *Vallet,* 89 Cal. 249.[5])

Naphtaly, Friedenrich & Ackerman, for Respondent.

The question of actual bias is one of fact for the trial court. (*Trenor* v. *Central Pac. R. R. Co.,* 50 Cal. 222, 230; *McFadden* v. *Wallace,* 38 Cal. 51; *Raschenberg* v. *Southern Electric R. R. Co.,* 161 Mo. 70, and cases cited.) The instructions as a whole were correct, and the propositions criticised by appellant were qualified by other instructions given.

[1] 36 Am. Dec. 515.

[2] 66 Am. St. Rep. 39.

[3] 77 Am. St. Rep. 184.

[4] 56 Am. St. Rep. 87.

[5] 23 Am. St. Rep. 465.

HENSHAW, J.—This action was instituted by plaintiff to recover damages against the defendant for negligently causing the death of his minor daughter. A verdict was rendered in favor of the defendant, and from the judgment which followed and from the order of the court denying plaintiff's motion for a new trial this appeal is prosecuted.

1. It is insisted that the court erred in denying plaintiff's challenge for cause interposed to the jurors Farquharson and Dorland. Plaintiff was compelled to use one of his peremptory challenges upon Farquharson, and had exhausted all of his peremptory challenges before obtaining a jury, and was thus constrained to accept as a juror Dorland, whom otherwise he would have excused. There is no substantial difference in the mental attitude and testimony of the two jurors upon their *voir dire*. Both felt a prejudice against suits to recover damages for personal injuries, believing that many such were brought without merit, and that the number was constantly increasing. The evidence of negligence would have to be very clear before they would render a verdict for plaintiff. It would require clearer proof to justify a verdict for plaintiff in an action to recover damages than in an ordinary action. If it were a suit for money they would not be so particular in requiring proof as in a case of damages for personal injuries. Farquharson stated that he would require conclusive evidence that the defendant was in error; that he would be unwilling to have a damage suit in which he was plaintiff tried by a jury of the same frame of mind as his own. Asked why, he stated: "Well, it might be that my state of mind might influence my decision." Asked if he would not possibly decide the case completely upon the merits, without importing into it any other consideration, he replied, "Perhaps so," but further stated that it would require conclusive evidence that defendant was in error, and that he would require the evidence in this particular case to be perfectly clear and stronger than in other cases, notwithstanding what the instructions of the court might be. If he had lost a daughter he would not care to have the case tried by jurors in his frame of mind, for the reasons that "They might be unconsciously affected, yes, sir, as I may be, too. I admit that I might be affected unconsciously."

Mr. Dorland, entertaining the same prejudice against such suits, stated that he also would require stronger proof in such a damage suit than he would in an ordinary case. Asked if he could not sit as a juror and listen to the testimony of the witnesses and arrive at a verdict without being governed in the least by any prejudice which he might have, he answered: "No, I don't say that I could do that. I have that still in my mind, and I cannot throw that off exactly, but I could try." The prejudice which he entertained against damage suits generally would more or less govern his judgment in arriving at a verdict in this suit, and it would require stronger proof in every damage suit than it would in a case that was not a damage suit. He would weigh the evidence upon behalf of the plaintiff under the influence of the feeling of prejudice which he entertained against such suits generally.

The honesty of these jurors is beyond question. Their answers were perfectly frank, but neither could nor would give any assurance that he could try the case dispassionately, uninfluenced by the prejudice which he entertained. Their answers, therefore, differ in effect from those of jurors in many of the cases presented, who state that, notwithstanding their opinion, or feeling, or bias, they could and would act impartially and decide strictly in accordance with the evidence and the rules of law given to them by the court. Even in many of those cases, notwithstanding the positive declaration of the juror and the provision of the Penal Code (Pen. Code, sec. 1076), this court has felt compelled to reverse the ruling of the trial judge, because, upon a consideration of the whole testimony, it has seemed manifest that the juror could not do that which he so positively declared his ability to do; for, as was said in *People* v. *Gehr,* 8 Cal. 359, "Few men will admit that they have no sufficient regard for truth and justice to act impartially in any matter, however much they may feel in regard to it, and every day's experience teaches us that no reliance is to be placed in such declarations." From the criminal records illustrations of this may be cited: *People* v. *Weil,* 40 Cal. 268; *People* v. *Wells,* 100 Cal. 227; *People* v. *Miller,* 125 Cal. 44; *Williams* v. *United States,* 93 Fed. 396. As to civil cases, in *Lawlor* v. *Linforth,* 72 Cal. 205, the juror, after having been accepted, inquired what kind of an action

was pending, and was informed of its nature, and then declared himself hostile to all landlords. This court said: "It is plain, however, that it was manifest to court and counsel that the juror was incompetent because of his declared bias against all landlords, one of whom was the plaintiff in an action then about to be tried." In *Lombardi* v. *California-Street Ry. Co.*, 124 Cal. 313, the challenged juror having said that he knew the plaintiff and his family, and that he wanted to be excused from serving, was asked why, and replied: "If I sit on a case I do not want to know either of the parties; I want to be impartial on both sides.—Q. But still you could be impartial?—A. Well, if I am sworn in I would have to go according to the evidence.—Q. Would you do it?—A. Yes, sir, if I were sworn in.—Q. And if you were sworn as a juror, would you go according to the evidence and the instructions of the court?—A. Yes, sir.—Q. And without prejudice?—A. Certainly. I know his family." The situation was thus the reverse of that here presented, but was more favorable to the respondent upon that appeal, in that the juror declared that he could and would try and decide the case according to the evidence and the instructions. This court in reversing the judgment, said: "That this juror was candid, honest, and sincere in all his statements is beyond question, and any such man, if compelled to serve as a juror, would, to the best of his ability, decide according to the evidence and the instructions of the court. . . . It may be that some men may be just and impartial toward an enemy, or even remove from their mind and memory and heart all the leanings, inclinations, and desires that so naturally draw them to the side of a friend. But the statute makes no exceptions. It does not add the qualification, 'but if the juror will swear that he can impartially try the case, notwithstanding the bias toward his friend or his prejudice against his enemy, the challenge shall be disallowed.' . . . That the juror doubted his ability to impartially consider the evidence and determine which party should prevail is abundantly shown. . . . The right to unbiased and unprejudiced jurors is an inseparable and inalienable part of the right to a trial by jury guaranteed by the constitution."

2. In contemplation of a new trial certain instructions given by the court invite attention: Complaint is made of a

portion of one of the instructions, couched in the following
language: "In order to hold them [defendants] liable in this
case and entitle plaintiff to recover, it must further appear
to your satisfaction that the deceased, May Quill, was with-
out fault." It is urged that this shifted the burden of proof
and told the jury that the plaintiff must affirmatively estab-
lish lack of contributory negligence. We do not so under-
stand it. It amounted to nothing more than a declaration to
the jurors that even if they found defendant negligent, still
plaintiff could not recover if the deceased herself had been
guilty of contributory negligence. The instruction, however,
could well have been made more specific in this regard.

Complaint is further made of a series of instructions, all to
the effect that the conduct of the deceased, who was a girl of
thirteen, was to be measured by what "an ordinarily cautious,
careful, and prudent person would have done under the same
circumstances." It is said that herein no allowance is made
for the fact that the deceased was a minor child, and that the
jury might well have been misled into believing that the care,
caution, and prudence required of her were the care, caution,
and prudence which the ordinary adult person would have
exercised under the same circumstances. Of course, as was
said in *Studer* v. *Southern Pacific Co.*, 121 Cal. 400,[1] "The
same act which would be negligence in an adult may not be
such if done by a child, but a child is required to exercise the
same degree of care that would be expected from children of
his age, or which children of his age ordinarily exercise. . . .
Children, as well as adults, should use the prudence and dis-
cretion which persons of their years ordinarily have. The law
imposes upon minors the duty of giving such attention to
their surroundings and care to avoid danger as may fairly and
reasonably be expected from persons of their age and capa-
city." In this regard, also, to avoid the possibility of mis-
understanding, the instructions could profitably be made more
explicit.

In instructing as to the measure of damage the court limited
the consideration of pecuniary loss suffered by reason of the
plaintiff's deprivation of the comfort and society of the de-
ceased "for the remaining period of her minority." A parent

[1] 66 Am. St. Rep. 39.

CXL. Cal.—18

may enjoy the comfort and society of a child after its minor-. ity, and even after its marriage, and there is nothing in the law which will limit the consideration by the jury to the period of minority only. We do not, however, think that the court was in error in modifying the proposed instructions so as to eliminate from the consideration of the jury, as an element of the pecuniary loss suffered by plaintiff, the "protection and support" of the minor daughter. The court had already instructed the jury that they were to take into consideration the probable value of the services of the daughter to the parent through her minority, or until her marriage. We do not understand that, independent of this, a parent may look to his female child for "protection and support." This is a matter for consideration, and has been upheld in cases where the widow and children are suing upon account of the alleged wrongful killing of the husband and father, the natural protector and bread-winner.

The judgment and order are therefore reversed and the cause remanded.

McFarland, J., and Lorigan, J., concurred.