[L. A. No. 13150. In Bank.—March 31, 1932.]

H. B. R. BRIGGS et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

McAdoo, Neblett & Claggett, Wm. H. Neblett and S. S. Hahn for Petitioners.

Chandler, Wright & Ward and Chandler P. Ward for Respondents.

THE COURT.—Petitioners seek by prohibition to restrain the Superior Court in and for the County of Los Angeles, and Frank C. Collier and J. T. B. Warne, Judges thereof, from hearing and trying a certain contempt proceeding now awaiting trial in that court, and in which proceeding petitioners herein are named as defendants. Petitioners contend that Judge Collier is disqualified from hearing the contempt case on the ground that it is "probable that, by reason of bias or prejudice of such . . . judge . . . a fair and impartial trial cannot be had before him". (Subd. 5, sec. 170, Code Civ. Proc.)

The controversy thus presented is of long standing. On May 17, 1930, petitioners were charged with having committed constructive contempts arising out of certain publications appearing in the "Los Angeles Record," of which the petitioners are the publishers and editors. Upon the filing of the complaint, the Superior Court in and for Los Angeles County caused to be issued an order to show cause directed to petitioners, and which order was made returnable before Judge Collier. Before the return date, petitioners filed a statement objecting to the hearing and trial of the contempt case before Judge Collier on the grounds that he was interested in the action; that he was biased and preju-

diced; and that he had given advice to the Los Angeles Bar Association, at whose request the contempt proceedings had been instituted. The grounds of the alleged disqualification were set forth in full. This statement was filed by petitioners on the theory that the provisions of section 170 of the Code of Civil Procedure applied to constructive contempt proceedings. Judge Collier ruled that this section did not apply to constructive contempt proceedings. Petitioners applied to this court for a writ of prohibition to have that question determined. This court held in the case of *Briggs* v. *Superior Court*, 211 Cal. 619 [297 Pac. 3], that the provisions of section 170 of the Code of Civil Procedure applied to constructive contempt proceedings, and that, when the trial judge's disqualifications are attacked in such a case, another and impartial judge must pass on that question, as provided by the amendments of 1927 to that section. In accordance with that opinion, the chairman of the Judicial Council appointed Judge Warne to hear and determine the question as to the qualifications of Judge Collier. Judge Warne ruled that Judge Collier was not disqualified, for reasons that are set forth in a written opinion which is set forth in full in the present petition. The decision of Judge Warne resulted in the present petition for prohibition, which is based on the theory that Judge Collier is disqualified as a matter of law from presiding at the trial of the contempt case.

The original statement objecting to Judge Collier alleges that the proceeding in contempt was instituted at the request of the Los Angeles Bar Association; that Judge Collier is an active member thereof; that Judge Collier was then a candidate for re-election as judge of the superior court; that his name, together with that of the other candidates, was to be submitted to the members of the association in a plebiscite; that the Bar Association was to assist financially in the campaign of those who won the plebiscite; that Judge Collier had expressed an opinion as to the merits of the case to the members of the association; that he had written a letter to the association showing his partiality. In reference to the letter alleged to have been written by Judge Collier, Judge Warne ruled, and his ruling was undoubtedly correct, that the interpretation sought to be placed thereon by petitioners was not well founded. Petitioners

recognize that the grounds for disqualification alleged in the original statement are now, for the most part, moot for the reason that the election mentioned by petitioners has long since been held, but allege, by a supplemental statement, that facts occurring subsequently to the filing of the original statement conclusively show, as a matter of law, that it appears "probable" that Judge Collier is biased and prejudiced so that a fair and impartial trial cannot be held before him. It is alleged that when the contempt matter first came before Judge Collier for hearing on June 2, 1930, and at the time that he ruled section 170 of the Code of Civil Procedure had no application to constructive contempt proceedings, the following took place:

Judge Collier ascended the bench, visibly agitated (which agitation petitioners allege was caused by anger toward them) and had himself sworn as a witness. Then, in an oral statement combining testimony, arguments and rulings, he concluded that he was not disqualified. He took up each statement alleged by petitioners to constitute a ground for disqualification and denied its truth. During the course of his oral statement, Judge Collier stated:

"Mr. Briggs, will you please arise so that I may see you. I want to look you squarely in the eye when I say certain things that I am going to say this morning. Taking up the first statement objecting to the hearing at the trial of this matter . . . that is an unqualifiedly false statement." He then told Mr. Briggs that another charge of disqualification is "likewise an unqualifiedly false statement"; that the charge that he had given advice to the Los Angeles Bar Association is "absolutely and unqualifiedly and wholly false—not one word of truth in it. And the falsity of that statement could have easily been ascertained upon inquiry of me or of any member of the Los Angeles Bar Association"; that another charge was "absolutely and unqualifiedly false . . . there is no truth in the statement whatsoever"; that another charge "is false in every respect". Referring again to the charge that he had advised the Los Angeles Bar Association he stated "that statement is a falsehood—every word of it; every word of it . . . I challenge anyone here to prove that statement. . . . Now any attempt on the part of the drawer of this document or the person who verified it to state that I advised with

the Los Angeles Bar Association or any of its Board of Trustees or members with regard to this proceeding is an absolute, unqualified falsehood, and could have been ascertained, if the drawer of this document, or its verifier, had made an investigation of any kind concerning it.'' It would serve no useful purpose to quote from the rest of the statement. Sufficient has been set forth to show the character of the statement and to indicate the state of mind of the judge at the time it was made.

Petitioners contend that Judge Collier has clearly made it appear that it is ''probable that by reason of bias or prejudice . . . a fair and impartial trial cannot be held before him'', for the reason that by his statement of June 2, 1930, he has shown that he will start the trial with the settled conviction that petitioners have been capable and guilty of deliberately misstating certain facts in the verified statement filed by them in this proceeding. With this basic premise as the starting point, it is argued that if Judge Collier be permitted to try the case, at such trial he will be both the trier of the fact and of the law; that as the trier of fact it will be necessary for him to pass upon the credibility of the witnesses, the most important of whom will be petitioners; that, in order to determine the qualifications of a judge in such a case, the same test that is applied to a prospective juror should be applied; that a juror would be disqualified if he had the belief that any of the parties to the action had been guilty to his knowledge of having deliberately told a falsehood.

Judge Collier not only admits having made the statements set forth by petitioners, but sets forth these statements *verbatim* by way of answer to the original statement of petitioners. After the supplemental statement of petitioners had been filed setting forth the statement of June 2, 1930, as an additional ground of disqualification, Judge Collier filed a supplemental answer thereto, in which he admits that when he ascended the bench on that morning he ''was visibly shaken with emotion, but he denies that his attitude toward the defendants was either of anger or disdain, but on the contrary that this affiant was then moved by a desire of great earnestness and sincerity to deny and refute so far as possible all of the statements contained in the affidavit of bias and prejudice . . . ''; he also specifically denies that

he took advantage of his position as a judge to denounce the defendants. It is then alleged in various forms that by the use of the words "false", "unqualifiedly false", "absolutely false", etc., he did not *intend* to imply that the petitioners had knowingly made false statements, but used that form of expression simply as a denial of the allegations in petitioners' statement. On this state of the record Judge Warne ruled that "in the absence of any proof to the contrary (as to the intent with which the words were used) this court is bound to resolve the matter in the Judge's favor", and for that reason held that Judge Collier was not disqualified. It is the correctness of that determination that is challenged in this proceeding.

The first question presented is whether or not prohibition can be used to test the correctness of Judge Warne's decision. Prior to 1927, when the qualifications of a judge were questioned, it was necessary for the challenged judge to pass on the question himself. It was held that under the law, as it then existed, the correctness of that determination could be tested by prohibition, even where the aggrieved party had a remedy by appeal. (*Hall* v. *Superior Court,* 198 Cal. 373 [245 Pac. 814] ; *Lindsay-Strathmore·Irr. Dist.* v. *Superior Court,* 182 Cal. 315 [187 Pac. 1056] ; *Quatman* v. *Superior Court,* 64 Cal. App. 203 [221 Pac. 666].) In 1927 section 170 of the Code of Civil Procedure was amended to provide that when the qualifications of a judge are challenged, the challenged judge may consent to have the action tried before another judge, or he may file his written answer admitting or denying the charges and may set forth "any additional fact or facts material or relevant to the question of his disqualification. . . . No judge . . . who shall deny his disqualification shall hear or pass upon the question of his own disqualification; but in every such case, the question of the judge's disqualification shall be heard and determined by some other judge". No reason has been suggested why these changes in the procedure in determining a judge's qualifications have in any way changed the rule that the validity of that determination may be tested by prohibition. The same reasons why prohibition was permitted under the old law still exist. If a judge is disqualified as a matter of law, every order entered by him is as equally void under the new law as it was under the old,

and no reason appears why the parties should be forced to trial before a disqualified judge, only to have the judgment set aside when it later appears that as a matter of law the judge was disqualified. It may be conceded that when the disqualification of a judge is a question of fact, and the facts are disputed, the determination of the judge assigned to pass on the question is final and conclusive under the well-settled rule that appellate courts are bound by the determination of a lower court, based on conflicting evidence. But where the facts are without substantial conflict the question of disqualification is one of law, and prohibition will lie. It would seem to be to the interest of all concerned that this should be so and that a final determination should he had at the earliest opportunity. Particularly is that so in the present case. If Judge Collier is disqualified as a matter of law, every order entered by him in the proceeding will, of course, be null and void. There is no independent appeal from Judge Warne's order holding Judge Collier to be qualified, and the correctness of that ruling cannot be tested on appeal from the judgment in the contempt proceedings, for the reason that there is no appeal from a judgment in ·a contempt proceeding. If petitioners are forced to trial before Judge Collier and are convicted, they could, perhaps, secure a review of Judge Warne's ruling by *habeas corpus* or *certiorari*, but that relief is certainly not adequate. This court has recently held that the amendments of 1927 to section 170 of the Code of Civil Procedure in no . way changed the rule that the correctness of the trial court's determination that a judge is or is not qualified can be passed upon by prohibition addressed to this court. (*Central Pacific Ry. Co.* v. *Superior Court,* 211 Cal. 706 [296 Pac. 883].) We have no hesitancy in holding, therefore, that if the question of the disqualification of Judge Collier is a question of law, this court has the power and jurisdiction to determine that question in the present proceeding. We turn, therefore, to a discussion of the question as to whether Judge Collier is disqualified as a matter of law.

The amendments of 1927 to section 170 of the Code of Civil Procedure not only made several important changes in procedure, but also changed the substantive law in reference to disqualifying a judge by reason of bias or prejudice. Before 1927 the section on bias and prejudice provided that

a judge was disqualified when it "appears from the affidavit or affidavits on file that either party cannot have a fair and impartial trial before any judge . . . by reason of the prejudice or bias of such judge". Under this section it was necessary to show actual bias or prejudice. In 1927 the wording of the section was changed to read that a judge is disqualified "when it is made to appear probable that by reason of bias or prejudice of such . . . judge . . . a fair and impartial trial cannot be had before him". Under the section prior to said amendment it was necessary not only to show bias and prejudice, but also that a fair trial could not be had by reason thereof. As amended the section does not dispense with but still requires a showing of bias or prejudice. It then remains to determine whether as matter of law it is probable by reason thereof a fair and impartial trial cannot be had. Our first inquiry is whether the bias or prejudice of Judge Collier has been established without substantial conflict in the evidence.

▮ None of the facts is in dispute. Judge Collier does not deny that he made the statements alleged to have been made by him at the hearing on June 2, 1930, but in fact candidly admits having made said statements. When they are read as a whole the only reasonable conclusion to be drawn from the words used is that Judge Collier meant to charge and did in fact charge these petitioners with having knowingly made false statements in their affidavit. This is the usual and ordinary meaning of the word "false" or "falsehood". (*Hatcher* v. *Dunn,* 102 Iowa, 411 [36 L. R. A. 689, 71 N. W. 343] ; *United States* v. *Ninety-nine Diamonds,* 139 Fed. 961, 968 [2 L. R. A. (N. S.) 185] ; *Gilpin* v. *Merchants Nat. Bank,* 165 Fed. 607, 611 [20 L. R. A. (N. S.) 1023].) That this was the meaning intended to be conveyed at the time the statement was uttered, is made certain by the terms "absolutely", "unqualifiedly", "wholly", used repeatedly in conjunction with the terms "false" and "falsehood", and by the repeated assertion that if any investigation at all had been made the falsity easily could have been ascertained. We feel impelled to conclude that the words used by him and the conduct of Judge Collier at the time and under the circumstances show, without any substantial conflict in the evidence, bias and prejudice against the petitioners as contemplated by the

code section. Respondents contend, however, that there is a conflict in the evidence which is binding on this court because Judge Collier, in his answering affidavit, gave it as his opinion as to his state of mind when he uttered these words that he did not mean by the terms used to charge the petitioners with having deliberately made false statements, but simply intended to deny the truth of the allegations in the affidavit of the petitioners. As already stated, Judge Warne ruled that this statement of Judge Collier as to his opinion as to what he intended by the use of the terms was binding on him. It is obvious that if the affidavit of Judge Collier in this respect creates a conflict in the evidence, under the principles already discussed, Judge Warne's ruling is binding and conclusive on this court. But it is our opinion that the statement of Judge Collier as to his opinion regarding his state of mind was not binding on Judge Warne, and, in fact, did not raise a conflict in the evidence in this case. It is obvious that the legislature, by providing as it did in 1927 that the question of disqualification should be passed on by another judge, not disqualified, intended to deprive the challenged judge of the power as well as of the somewhat delicate necessity of passing upon the question as to his state of mind. If it be held that the statement of the challenged judge as to his opinion as to his state of mind is binding or conclusive, it is obvious that in every case the challenged judge himself in effect will pass upon the question of his own qualifications, contrary to the letter and spirit of section 170 of the Code of Civil Procedure. It is our opinion that in this case the state of mind of the challenged judge must be determined by what he said or did, and not by what he may think his state of mind to be. Any other rule would avoid the purpose of the 1927 amendments. We are not to be understood as holding that under no circumstances may the affidavit of the challenged judge as to the meaning of the words or conduct attributed to him be considered by the judge assigned to pass upon the issue of whether bias or prejudice exists. We are simply holding that the charge of bias or prejudice has been sustained in this case by the undisputed facts and circumstances appearing in the record and that the opinion expressed by Judge Collier in his affidavit as to the intended meaning to be given to his words did not raise

a substantial conflict in the evidence. The statements made by Judge Collier and his conduct on the bench may reasonably be interpreted to mean but one thing, namely, that Judge Collier believed that these petitioners had deliberately misstated the truth in their affidavit, and that he charged them with having done so. Under these circumstances is it fair to Judge Collier or to the petitioners that he should be called upon to preside at the trial of the case? We think it would be fair to neither party. The trial judge in the contempt case will be the trier of both the facts and of the law. As the trier of the facts he will be called upon to pass on the credibility of these petitioners as the principal witnesses in their own behalf. Is it humanly possible or probable that a judge who has stated under oath that it is his opinion that these petitioners have deliberately falsified under oath can pass upon their credibility with that impartial judicial mind which should exist in the trier of the facts? We think it not probable. Where the trial judge acts as the trier of both the facts and the law his qualifications, so far as bias and prejudice are concerned, are somewhat the same as the qualifications of a juror. No one would doubt that if a juror stated that he was of the opinion that one of the parties to the action was not only capable of being but had, to his knowledge, been guilty of making false statements under oath, such juror would and should be disqualified, even if that juror stated that he could give the parties a fair trial. (*Quill* v. *Southern Pac. Co.*, 140 Cal. 268 [73 Pac. 991].)

The District Court of Appeal has recently decided a case closely in point with the instant case. (*Evans* v. *Superior Court*, 107 Cal. App. 372 [290 Pac. 662].) In that case Judge Tappaan had presided at the trial of a certain action. At the close of the trial he rendered an oral opinion in which he stated that two of the defendants, naming them, had been guilty, in his opinion, of deliberately falsifying while under oath. Later, another case in which these two individuals were parties defendant was assigned to Judge Tappaan for trial. The two individuals objected to Judge Tappaan on the ground that he had an opinion as to the credibility of these parties gained from the prior case. An impartial judge was appointed to pass upon the question of the qualifications of Judge Tappaan. He ruled that

Judge Tappaan was qualified. Defendants sought by prohibition to prevent Judge Tappaan from trying the case. The writ was granted. It was held that prohibition was the proper remedy, and that as a matter of law Judge Tappaan was disqualified because he had admittedly expressed an opinion as to the lack of credibility of the petitioners.

We are in accord with the theory of the above case, and are of the opinion that the principles therein stated are conclusive in the case at bar and that the petitioners are clearly entitled to the writ.

In directing the issuance of the writ it is obvious that it should be confined in its application to the particular judge whose disqualifications are herein passed upon.

Let the peremptory writ, as thus limited, issue.

Rehearing denied.