469 A.2d 1084

**MUNICIPAL PUBLICATIONS, INC., D. Herbert Lipson, and Alan Halpern, Petitioners,**

v.

**Judge Bernard SNYDER, Court of Common Pleas of Philadelphia County, and Court of Common Pleas of Philadelphia County.**

Superior Court of Pennsylvania.

Argued Oct. 26, 1983.

Filed Nov. 30, 1983.

Reargument En Banc Denied
Feb. 3, 1984.

466

David H. Marion and Arthur H. Bryant, Philadelphia, for petitioners.

Richard A. Sprague, Philadelphia, for Snyder, respondent.

Jonathan D. Bennett, Philadelphia, for Edghill, respondent.

Before SPAETH, President Judge, and WICKERSHAM and BROSKY, JJ.

SPAETH, President Judge:

Before us is a petition for writ prohibiting the Honorable Bernard SNYDER from continuing to preside over a motion that he recuse himself. We have decided that the writ should issue, with an order directing that another judge be designated to hear and decide the recusal motion.

We shall start by considering our power to issue a writ of prohibition. Then we shall state the legal principles that govern the exercise of that power, and examine the facts of this case in the light of those principles. And finally, we shall consider whether an order filed by the Supreme Court precludes issuance of the writ.

–1–

The writ of prohibition "is of very ancient origin, and may be said to be as old as the common law itself." J. High, A Treatise on Extraordinary Legal Remedies 707 (3d ed. 1896). Glanville, writing in 1189, gives a form of the writ. Originally the writ issued from the King's Bench, so called because the King himself used to sit on the court, 3 W. Blackstone Commentaries 42, but later the other courts at Westminster, the Common Pleas and the Exchequer, were given the power to issue the writ, *id.* at 111. The jurisdiction of the King's Bench was said to be "very high and transcendent. It keeps all inferior jurisdictions within the bounds of their authority, and may either remove their proceedings to be determined [by the King's Bench] or prohibit their progress below." *Id.* at 42.

The Pennsylvania Supreme Court was at its inception given the powers of the three courts at Westminister. Act of May 22, 1722, 1 Sm.L. 131, ch. 255. In *Carpentertown Coal & Coke Co. v. Laird*, 360 Pa. 94, 61 A.2d 426 (1948), the Supreme Court said: "By the Act of 1722 the Supreme Court of Pennsylvania was placed in the same relation to all inferior jurisdictions that the King's Bench in England occupied, and thus the power of superintendency over inferior tribunals became vested in this Court from the time of its creation .... In the exercise of its supervisory powers over subordinate tribunals the Court of King's Bench em-

ployed the writ of prohibition and such right and practice accordingly passed to the Supreme Court ...." *Id.*, 360 Pa. at 99–100, 61 A.2d at 428–429 (citations omitted). *See also, First Congressional District Election*, 295 Pa. 1, 144 A. 735 (1928) (Supreme Court has power to issue common law writ of prohibition). The Court's power to issue the writ is codified in 42 Pa.C.S.A. § 721, which does not enlarge or restrict the office of the common law writ but merely confers the power to issue the writ:

The Supreme Court shall have original but not exclusive jurisdiction of all cases of:

(2) Mandamus or prohibition to courts of inferior jurisdiction.

■ This court was granted the power to issue the writ of prohibition in 1941. Act of May 21, 1941, P.L. 47. *Turtle Creek Borough Audit*, 401 Pa. 201, 163 A.2d 876, 879 (1960) ("It was not until 1941 that power to issue the extraordinary common law writs of mandamus and prohibition to courts of inferior jurisdiction was first conferred on the Superior Court ....") We are not, however, vested with the powers of the King's Bench, *Bell Appeal*, 396 Pa. 592, 152 A.2d 731 (1959), and we may therefore only issue the writ as ancillary relief. *Pa. Labor Relations Board v. Butz*, 411 Pa. 360, 364, 192 A.2d 707, 710 (1963). This power is codified in 42 Pa.C.S.A. § 741:

The Superior Court shall have no original jurisdiction, except in cases of mandamus and prohibition to courts of inferior jurisdiction where such relief is ancillary to matters within its appellate jurisdiction.....

■ Here, the writ is requested as relief ancillary to a matter within our appellate jurisdiction. As will later be stated in more detail, the underlying action is an action for libel. Any appeal from the final judgment will have to be taken to this court. 42 Pa.C.S.A. § 742. Therefore, we have the power to issue the writ, and must decide whether to issue it.

–2–

The writ of prohibition issues from a superior tribunal to an inferior tribunal to prevent the inferior tribunal assuming jurisdiction it does not legally have. 3 W. Blackstone's Commentaries 111. It has been said that under English common law "[t]he appropriate function of the remedy is to restrain the exercise of unauthorized judicial or quasi-judicial power, which is regarded as a contempt of the state or sovereign, and which may result in injury to the state or to its citizens," High, *supra* at 708, but that under American common law the writ issues primarily to protect the rights of the petitioner seeking the writ, rather than the jurisdiction of the superior tribunal, Hughes & Brown, The Writ of Prohibition, 26 Geo.L.J. 831 (1938). The writ is an extraordinary legal remedy. It is "to secure order and regularity in judicial proceedings, and should be issued only in cases of extreme necessity." 22 R.C.L. 5. *See also, Carpentertown Coal & Coke Co. v. Laird, supra* 360 Pa. at 102, 61 A.2d at 430. Issuance of the writ is never a matter of right but rests in the discretion of the court. *Id.,* 360 Pa. at 102, 61 A.2d at 430.

Generally speaking, at common law two conditions must be satisfied before the writ of prohibition may issue. The first condition is that there has been a usurpation of power by the inferior tribunal. The second condition is that there is no adequate remedy other than the writ. High, *supra* at 708.

The first condition—a usurpation of power—is satisfied when the inferior tribunal has no jurisdiction over the subject matter from the very beginning of the proceeding. As an example of lack of jurisdiction, the Supreme Court in *Akron Borough v. Pennsylvania P.U.C.,* 453 Pa. 554, 561, 310 A.2d 271, 275 (1973), quoting Gellhorn & Byse, Administrative Law 138 (1970), said: "It is as though a justice of the peace, empowered to hear only petty cases such as those involving traffic law violations, were to summon parties before him in order to decide whether a divorce

decree should be granted." The first condition is also satisfied when the inferior tribunal had jurisdiction but has exceeded its jurisdiction. "The province of a writ is not necessarily confined to cases where the subordinate court is absolutely devoid of jurisdiction, but it is extended to cases where such tribunal, although rightfully entertaining jurisdiction of the subject-matter in controversy, has exceeded its legitimate powers." High, *supra* at 734 (footnote omitted). As explained in 3 W. Blackstone's Commentaries 111: "[I]f in handling of matters clearly within their cognizance, they transgress the bounds prescribed to them [by law] ... in such cases, also, a prohibition will be awarded." Blackstone illustrates the point by supposing a case "where [the ecclesiastical courts] require two witnesses to prove the payment of a legacy, a release of tithes, or the like .... For, as the fact of signing a release, or of actual payment, is not properly a spiritual question, but only allowed to be decided in those courts, because incident or accessory to some original question clearly within their jurisdiction; it ought, therefore, where the two differ, to be decided, not according to the spiritual, but the temporal law ...." *Id.* at 111–12.

As a matter of logic, the distinction between a "lack" and an "excess" of jurisdiction may not always be clear.[1] Thus it has been said: "Although want of jurisdiction and excess of jurisdiction are commonly referred to and considered as separate grounds for the issuance of the writ, there is in principle little distinction between them as each means an attempt to take judicial action without judicial power or authority for such action. The subject of inquiry in each case is the extent of power in the court proceeded against." 22 R.C.L. 18–19 (footnote omitted). Whether arising from a "lack" or "excess" of jurisdiction, however, there must be a usurpation of power before a writ of prohibition will issue. The writ is not an appropriate reme-

---

1. It is arguable—and Judge BROSKY in his concurring opinion forcefully makes the argument—that the distinction is illusory, and that what the common law cases require is *lack* of jurisdiction.

dy for the correction of errors not going to jurisdiction. High, *supra* at 714; 22 R.C.L. 15.

■ The second condition—no other adequate remedy— derives from the nature of the writ: "It follows from the extraordinary nature of the remedy . . . that the exercise of the jurisdiction is limited to cases where it is necessary to give a general superintendence and control over inferior tribunals, and it is never allowed except in cases of a usurpation or abuse of power, and not then unless other existing remedies are inadequate to afford relief." High, *supra* at 712. *See also* 23 Am. & English Encyclopedia of Law 207 (2d ed) ("It is always a good reason for withholding the writ if the party aggrieved has another and complete remedy at law, by which the desired end can be satisfactorily and fully accomplished.") "The mere fact that an applicant has a remedy by appeal or some other proceeding is not, however, conclusive against his right to the writ. Notwithstanding that fact, it may be granted if, in the judgment of the court, such remedy is not plain, speedy, and adequate." 22 R.C.L. 10. *See also* 23 Am. & English Encyclopedia of Law, *supra* at 208 (same). The fact that an appeal involves expense and delay is not by itself sufficient reason to hold that an appeal is not an adequate remedy. 22 R.C.L. 11. Also, it may be that there is no right to appeal, but that does not show that there is no adequate remedy other than the writ; there must be a usurpation of power. Thus in *Ex Parte Pennsylvania*, 109 U.S. 174, 176, 3 S.Ct. 84, 85, 27 L.Ed. 894 (1883), the United States Supreme Court explained: "[Correction of an error on the merits] cannot be done by prohibition, the remedy, if any, is by appeal. If an appeal will not lie, then the parties are concluded by what has been done. Congress alone has the power to determine whether the judgment of a court of the United States, of competent jurisdiction, shall be reviewed or not. If it fails to provide for such a review the judgment stands as the judgment of the court of last resort and settles finally the rights of the parties which are involved."

While these common law principles seem clear, the cases applying them are perhaps not so clear.[2]

In *First Congressional District Election, supra,* the Supreme Court found that the judge in question had assumed "powers which he did not possess." *Id.* 295 Pa. at 13, 144 A. at 739. Thus the first condition for the issuance of the writ—a usurpation of power—was satisfied. A petition from a losing candidate had been presented to two judges, sitting as the computation board, asking that certain ballot boxes be opened. Although the petition was dismissed by a divided court, one of the judges proceeded to order the requested relief. In issuing a writ of prohibition against the judge, the Supreme Court found that the writ "is not merely the proper but seems the only adequate remedy to apply." *Id.,* 295 Pa. at 14, 144 A. at 740. The Court did not say explicitly why an appeal was not adequate. Thus one misses the expected discussion of the second condition for the issuance of the writ. It would seem, however, that once a recount had been made, it would have been difficult to ignore its result. It therefore seems fair to read the case as one in which both of the common law conditions were satisfied.

In *McNair's Petition,* 324 Pa. 48, 187 A. 498 (1936), the Supreme Court issued a writ of prohibition against a grand jury investigation. The Court stated that a writ of prohibition is proper not only wherever a court acts outside of its jurisdiction but also where there is an abuse of jurisdiction. But then it went on to find that "there are no facts in this case to warrant a general investigation." *id.,* 324 Pa. at 62, 187 A. at 505, and concluded that the investigation was "totally unauthorized and an abuse of discretion," *id.,* 324 Pa. at 64, 187 A. at 506. The Court also found that "no other legal procedure than through the grant of a writ of prohibition is open to halt these apparently fruitless and pointless investigations, entailing great expense to the Commonwealth and inconvenience to the public at large." *Id.*

---

**2.** In this regard, the ensuing discussion of the cases should be read in the light of Judge BROSKY's discussion, in his concurring opinion.

This decision may be read as relaxing the common law requirements for a writ of prohibition,[3] for the Court did not discuss whether the lack of facts warranting the investigation raised a jurisdictional issue, and thus whether the first common law condition had been satisfied. Similarly, in *Philadelphia County Grand Jury Investigation Case*, 347 Pa. 316, 32 A.2d 199 (1943), the Supreme Court issued a writ of prohibition against a grand jury investigation because "the challenged action of the learned judge [in charging the grand jury without sufficient evidence of widespread criminal acts] was a manifest abuse of discretion ...." *Id.*, 347 Pa. at 320, 32 A.2d at 201. The Chief Justice wrote a strong dissent, arguing that there was no lack or abuse of jurisdiction, and distinguishing *McNair's Petition* on the basis that the grand jury there was investigating matters admittedly non-criminal in nature. *Id.*, 347 Pa. at 327, 32 A.2d at 204.

In *Carpentertown Coal & Coke Co. v. Laird, supra,* the Supreme Court reverted to a stricter view, citing approvingly the cases referred to in the dissenting opinion in *Philadelphia County Grand Jury Investigation Case, supra.*[4] The State Mining Commission had determined that the Pennsylvania Turnpike Commission had waived its right to

---

**3.** It is interesting to note that the Court's reference to High, *supra,* is not to "great caution and forbearance" but rather: "The object of the writ being to restrain subordinate judicial tribunals of every kind from exceeding their jurisdiction, its use in all proper cases should be upheld and encouraged...." *McNair's Petition, supra,* 325 Pa. at 64, 187 A. at 505, quoting High, *supra* at 604.

**4.** Nevertheless, especially in the criminal discovery and grand jury areas, the Court continues to review what are arguably not jurisdictional issues but rather abuses of discretion. *See, e.g., Lepley v. Lycoming County Ct. of Com. Pleas,* 481 Pa. 565, 393 A.2d 306 (1978) (reviewing pretrial order that defense counsel give prosecution tape of preliminary hearing; writ denied because order proper); *Commonwealth v. Caplan,* 411 Pa. 563, 192 A.2d 894 (1963) (order granting discovery to defendant improper but mandamus inappropriate remedy; all proceedings stayed so district attorney could petition for writ of prohibition); *Special Grand Jury Case,* 397 Pa. 254, 154 A.2d 592 (1959) (writ of prohibition granted where grand jury petition aimed at specific union). It may be that in these cases the Court was exercising its King's Bench powers.

support. The coal company then proceeded to mine most of the coal. Two years later the Turnpike Commission petitioned the Mining Commission for subsidence damages. When the Mining Commission issued a rule to show cause, the coal company filed a petition for a writ prohibiting the Mining Commission from any further proceedings. The Supreme Court denied the writ on the ground that decisions of the Mining Commission were appealable and the issuance of the rule to show cause did not necessarily indicate that the Mining Commission would not itself ultimately decide that it was without jurisdiction. Thus the Court appeared to reaffirm the two common law conditions for the issuance of a writ of prohibition—a usurpation of power, and no adequate remedy other than the writ.

However, in *Commonwealth ex rel. Specter v. Shiomos,* 457 Pa. 104, 320 A.2d 134 (1974), the Court again seemed to relax the common law requirements.[5] The Court granted a writ of prohibition against the enforcement of pretrial discovery by the defense of medical records in two rape cases. After quoting at length from *Carpentertown,* the Court said:

> Thus, under *Carpentertown,* a two-pronged test was set forth for this Court to follow when considering the granting of a Writ. The first aspect of the test is whether adequate remedies are provided at law to afford relief .... The second prong of the test is whether there is extreme necessity for the relief requested to secure order and regularity in judicial proceedings.

*Id.,* 457 Pa. at 107, 320 A.2d at 136.

This statement creates some uncertainty about the importance of the first condition at common law—a usurpation of power, either as a lack or an excess of jurisdiction—for nothing is said about the condition. Perhaps the decision can be reconciled with the common law by saying that "extreme necessity" is present when an inferior tribunal lacks or exceeds its jurisdiction. *See Philadelphia Newspa-*

---

5. This is Judge BROSKY's view. *See* his concurring opinion. He may be right.

*pers, Inc. v. Jerome,* 478 Pa. 484, 494 n. 11, 387 A.2d 425, 430 n. 11 (1978), *appeal dismissed,* 443 U.S. 913, 99 S.Ct. 3104, 61 L.Ed.2d 877 (1979) ("Prohibition is an extraordinary writ designed to assure regularity in judicial proceedings by preventing unlawful exercise or abuse of jurisdiction").

Other decisions create some uncertainty about the importance of the second condition at common law. Particularly in a case where the lack of jurisdiction is clear, the Supreme Court may not discuss whether there is no other adequate remedy. In *Schlesinger Petition,* 367 Pa. 476, 81 A.2d 316, (1951), a judge had interrogated a lawyer, who was appearing as plaintiff's counsel in a trespass case, about his affiliation with the Communist Party. When the lawyer refused to answer, the judge held him in contempt and found him unfit to practice law. The Supreme Court issued a writ of prohibition because what the judge had done "constituted an arrogation and exercise of a power beyond the jurisdiction of any judge ...," *id.,* 367 Pa. at 481, 81 A.2d at 319, in that he had deprived the lawyer of a valuable right without due process. The Court said that while the judge had jurisdiction over the trespass case, he had "no jurisdiction whatsoever," *id.,* over whether the lawyer should be disciplined for his affiliation with the Communist Party. Thus, while making plain that the first condition at common law—usurpation of power—was satisfied, the Court did not explain why the second condition—no adequate remedy—was also satisfied.[6]

6. In the case of *Petition of Specter,* 455 Pa. 518, 317 A.2d 286 (1974), the Court refused to issue a writ of prohibition quashing a subpoena. The challenge to the subpoena was not to the validity of the grand jury, but rather that the subpoena was based on information acquired in violation of the petitioner's constitutional rights and that the subject matter of the proposed questioning was beyond the scope of the grand jury. The Court said that the petitioner could choose to refuse to comply with the subpoena, and then if she was cited for contempt, she could appeal. Justice NIX, in dissent, said that petitioner's allegations raised doubts about the authority of the grand jury and were in essence a claim of lack of jurisdiction. He thought it would be a "miscarriage of justice ... to force her to suffer contempt in order to pursue that challenge." *Id.,* 455 Pa. at 522, 317 A.2d at 288. *But see Pirillo v. Takiff,* 462 Pa. 511, 341 A.2d 896 (1975), *cert. denied,* 423 U.S. 1083, 96 S.Ct. 873, 47 L.Ed.2d 94 (1976) (no adequate

It is probably not possible to reconcile all of the cases. One way to read the cases is as holding that when a clear lack or excess of jurisdiction is present, a court, in deciding whether to issue a writ of prohibition, need not consider whether another remedy would be adequate. This interpretation would regard the cases as somewhat relaxing the requirements of the common law. Another way to read the cases is as holding that when a clear lack or excess of jurisdiction is present, another remedy, such as an appeal, almost always will be inadequate. This interpretation would regard the cases as conforming to the requirements of the common law, the Supreme Court's failure to discuss other possible remedies being understood as representing a decision, not that the second common law condition need not be satisfied, but that the particular facts make plain without discussion that it has been satisfied. In most situations, we suspect, these somewhat different interpretations of the cases will lead to the same result.[7] However, given the extraordinary nature of the writ of prohibition, we have concluded that we should read the cases in the most conservative way,[8] that is, as holding that we should not issue the writ unless the traditional common law conditions are

appellate remedy where judge orders that particular attorney may not represent certain witnesses before grand jury).

**7.** The following quotation from Gellhorn & Byse, Administrative Law 138 (1970), will support either interpretation:
> The purpose of prohibition is to shut off the necessity of going through a hearing, a trial, before a tribunal that has no power to deal with the subject matter at all. Prohibition is not appropriately used to forestall a merely erroneous exercise of jurisdiction. On the other hand, it exactly fills the bill if the tribunal can in no circumstances whatsoever act validly as to the subject matter involved in the hearings it proposes to conduct.
> ... In such an instance the defendant would not have to suffer as patiently as possible through a hearing before a powerless tribunal and then seek to set aside its empty judgment; instead, he could stop the nonsense at the outset by obtaining a writ of prohibition.

**8.** We do not suggest by this that we have any marked disagreement with Judge BROSKY's reading of the cases. *See* footnote 5, *supra.* If the common law phrase "excess of jurisdiction" is re-phrased to read "extreme necessity" our reading of the cases and Judge BROSKY's reading are probably indistinguishable.

both satisfied—a usurpation of power, arising either from a lack or an excess of jurisdiction, and no adequate remedy other than the writ.

–3–

The underlying controversy, out of which the petition for writ of prohibition now before us arises, is an action for libel, filed by James Reginald Edghill against Municipal Publications, Inc., D. Herbert Lipson, and Alan Halpern, as of No. 2371 of the May Term, 1972, in the Philadelphia County Court of Common Pleas. The action was tried before the Honorable Bernard SNYDER, sitting without a jury, from April to October 1982. On March 14, 1983, defendants filed a motion that the trial judge recuse himself. The judge had not yet filed any findings of fact, conclusions of law, or decision. Attached to the recusal motion was an affidavit by defendant Lipson, publisher of Philadelphia Magazine, a division of defendant Municipal Publications. On April 21, 1983, plaintiff answered defendants' motion, denying or dismissing as hearsay the allegations made in the recusal motion. Also on April 21 the trial judge directed that the recusal motion be returned to the Motions Court for assignment for hearing.

On April 27, 1983, defendants asked the Honorable Edward J. BRADLEY, President Judge of the Philadelphia County Court of Common Pleas, to assign a judge from outside Philadelphia to hear the recusal motion. This request was also addressed to the Honorable Abraham J. GAFNI, Court Administrator of Pennsylvania, and to the Pennsylvania Supreme Court. It is not clear from the record whether these three requests were made simultaneously, but each was denied.

On May 4, 1983, the trial judge vacated his April 21 order, by which he had sent the recusal motion to the Motions Court, and set the motion down for hearing on May 23 before himself. On May 6 the judge filed a decision in the *Edghill* case, awarding plaintiff $7 million, of which $5 million were punitive damages. Defendants then—on a date not disclosed by the record before us but sometime

before May 23—petitioned the Supreme Court for a writ of prohibition seeking to disqualify the trial judge from ruling on the recusal motion, and seeking also an order vacating the judge's orders of May 4 and May 6. On May 27 the Supreme Court denied defendants' petition. Its order stated: "Petitioners having failed to demonstrate that their appellate remedies are inadequate, the petition is denied."

Meanwhile, the trial judge had commenced hearing the recusal motion. Defendants presented evidence until May 25, and plaintiff, from May 25 to July 13. On July 14, defendants made an offer to prove by the testimony of Jill Cohen, who had been the trial judge's law clerk during the *Edghill* trial, that during and after the trial, certain *ex parte* communications had occurred between the trial judge and counsel for the plaintiff. The trial judge rejected defendants' offer of proof and did not permit Cohen to testify, on the ground that the offered testimony was not proper rebuttal. On July 18 defendants filed a supplement to their recusal motion, alleging that they had first met and interviewed Cohen on July 7, incorporating the offer of proof they had made on July 14, and renewing their request for leave to call Cohen as a witness in support of their recusal motion. Also on July 18, Cohen executed an affidavit that she had "carefully read and reviewed" the offer of proof that had been made on July 14, and that "the statements contained in the offer of proof truly and correctly set forth the testimony which she was and is prepared to give under oath if permitted to do so."

The record before us does not disclose when the trial judge ruled on defendants' renewed request for leave to call Cohen as a witness, but we were advised at oral argument that defendants were not permitted to call Cohen, and that briefs for and against the recusal motion had been filed and counsel were awaiting notice from the trial judge regarding a date for argument.

On October 24, 1983, defendants filed with this court the petition for writ of prohibition that we are now considering. Argument was heard on October 26, 1983. We were ad-

vised at argument that plaintiff had requested that the Supreme Court prohibit us from hearing argument. Having received *no order from the Supreme Court, we directed* that argument proceed. Later that day the Supreme Court denied plaintiff's request. We then entered a stay of proceedings before the trial judge, and took defendants' petition for a writ of prohibition under advisement.

In the discussion that follows we shall first consider whether the trial judge lacked or exceeded his jurisdiction. Since, as we shall see, he clearly did, we shall next consider whether there is any adequate remedy for the excess other than issuing a writ of prohibition.

(a)

In considering whether the trial judge lacked or exceeded his jurisdiction, we may start with the Code of Judicial Conduct, adopted by the Supreme Court of Pennsylvania, effective January 1, 1974. 455 Pa. at xxxix (1973). Canon 2 of the Code provides: "A judge should avoid impropriety and the appearance of impropriety in all his activities." Canon 3 C of the Code provides in part:

C. Disqualification

(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

. . . .

(d) he . . .

. . . .

(iv) is to the judge's knowledge likely to be a material witness to the proceedings.

Code of Judicial Conduct Canon 3 C.

Thus, a recusal motion is in essence a motion that for the challenged judge to determine the merits of the matter in issue would be a violation of the Canons of the Code of Judicial Conduct.

■ With regard to a judge's impartiality the Supreme Court has said:

A jurist's impartiality is called into question whenever he has doubts as to his ability to preside objectively and fairly in the proceedings or where there exists [*sic*] factors or circumstances that may reasonably question the jurist's impartiality in the matter.

*Commonwealth v. Boyle*, 498 Pa. 486, 490 n. 4, 447 A.2d 250, 252 n. 4 (1982) (citations omitted).

A party alleging that a judge's impartiality may be reasonably questioned must be able to support the allegation by evidence. *See, e.g., Commonwealth v. Darush*, 501 Pa. 15, 459 A.2d 727 (1983); *Commonwealth v. Perry*, 468 Pa. 515, 364 A.2d 312 (1976); *Crawford's Estate*, 307 Pa. 102, 160 A. 585 (1931); *Commonwealth v. Conrad*, 241 Pa.Super. 324, 361 A.2d 421 (1976). Here, as we have said, defendants, in support of their motion, filed an affidavit by D. Herbert Lipson, and later offered testimony by Jill Cohen.

In the Lipson affidavit, Lipson stated, on the basis of information from "reliable sources," that among other things, the trial judge had recently been a guest of plaintiff's counsel on a chartered bus trip; plaintiff's counsel had "told a number of attorneys that he was raising money for and supporting" the trial judge's campaign to be elected to the Supreme Court of Pennsylvania; and (3) "a trial lawyer not involved in this case, whom I consider to be a reliable source of this information, told me confidentially that he knew for a fact that this case was fixed" and that plaintiff's counsel "was going to get a hugh award" from the trial judge.

In the Cohen offer of proof, later supported, as we have recited, by Cohen's affidavit, it is stated that Cohen would testify, among other things, that while the *Edghill* trial was in progress, and with no one present representing defendants, the trial judge and plaintiff's counsel often met in the judge's chambers and outer office; that she heard discussions between the trial judge and plaintiff's counsel pertaining to trial tactics and evidentiary questions, and character-

izing witnesses and defendants' counsel; that the trial judge discussed with plaintiff's counsel issues that she was researching; that with respect to the trial judge's candidacy for the Supreme Court, plaintiff's counsel helped the trial judge in writing a speech or presentation the judge was to make; that before entering his verdict, the trial judge commented about the reaction that defendants' counsel would have to find the judge on the Supreme Court and that he would not be able to get rid of the verdict; that after defendants' recusal motion was filed, the trial judge was angry and said to her that filing the motion would cost defendants another $3 million in punitive damages; and that after defendants' counsel, having submitted the recusal motion, had left the trial judge's chambers, plaintiff's counsel remained behind and in her presence he and the trial judge discussed the motion.

It is arguable that the Lipson affidavit did not provide a sufficient basis on which the trial judge's "impartiality might reasonably be questioned," Canon 3, Code of Judicial Conduct; *Commonwealth v. Boyle, supra,* given that its allegations were based on hearsay. But the same may not be said of the Cohen allegations. Those allegations were offered on the basis of Cohen's personal knowledge, and as gained by reason of her position as the trial judge's law clerk, and they attacked the trial judge's impartiality in a most extraordinarily explicit and severe manner. In making this observation, we do not intimate that the Cohen allegations are true; we know nothing of that. But if they are true, no one could reasonably deny that the trial judge had demonstrated such bias and prejudice as to require his disqualification.

The question presented, therefore, is this: When a motion for recusal makes allegations that, if true, require a judge's disqualification, may the judge himself proceed to rule upon the motion? And the answer to this question is: The judge may not proceed to rule on the motion; he must refer it to another judge for decision. If the judge does rule on the motion himself, he exceeds his jurisdiction. For by ruling

himself, the judge violates the principle, at the very foundation of our law, that no one may be judge of his own cause.

Perhaps the most famous statement of this principle is Sir Edward Coke's decision in *Dr. Bonham's Case*, 8 Co. Rep. 114a, 2 Brownl. 255 (1610). In April 1606 Thomas Bonham was summoned before the President and Censors of the Royal College of Physicians for practicing medicine in London without the College's certificate. Bonham was fined and forbidden under pain of imprisonment to practice until permitted to do so by the College. He nevertheless continued to practice, and refused to pay the fine. Eventually the Censors committed him to prison. Bonham thereupon brought an action for false imprisonment against the leading members of the College. The defendants pleaded the terms of the letters patent incorporating the College. These did indeed indicate that the Censors had the power to fine unlicensed practitioners. Coke, however, construed the letters patent as giving the Censors only the power to fine practitioners for incompetence. It not having been shown that Bonham had been incompetent, his fine, and therefore his consequent imprisonment, were unlawful. In reaching this conclusion, Coke pointed out that under the letters patent, the Censors were to receive one-half of the fines they imposed. Thus, in the proceeding against Bonham they were both judges and parties. Coke rejected a construction of the letters patent permitting such a result as repugnant to the common law principle that no one may be judge of his own cause, adding: "And it appears in our books, that in many cases, the common law will controul Acts of Parliament, and sometimes adjudge them to be utterly void: for when an Act of Parliament is against common right and reason, or repugnant, or impossible to be performed, the common law will controul it, and adjudge such act to be void." 8 Co.Rep. at 118a.

The rule that a judge whose impartiality has been challenged may not decide the merits of a motion that he recuse himself and that if he nevertheless does decide the motion,

he exceeds his jurisdiction, is widely recognized.[9] Indeed, the rule may fairly be characterized as unquestioned.

Two federal statutes, 28 U.S.C. § 144 and § 455, provide an example of statutory recognition of the rule. Section 455 makes the Code of Judicial Conduct applicable to the federal courts (just as our Supreme Court has made the Code applicable to Pennsylvania courts). Section 144 provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term [session] at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.
>
> 28 U.S.C. § 144.

The affidavit must be accepted as true for purposes of the recusal motion; the challenged judge may not inquire into facts beyond the face of the affidavit. *See, e.g., Berger v. United States*, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921); *United States v. Sciuto*, 531 F.2d 842 (7th Cir.1976); *Samuel v. University of Pittsburgh*, 395 F.Supp. 1275 (W.D.Pa.1975) *vacated on other grounds*, 538 F.2d 991 (3d Cir.1976). While the affidavit is ordinarily to be filed at least "ten days before the beginning of the term at which the proceeding is to be heard," "good cause" for a later

---

**9.** For a comprehensive review of statutes, court rules and cases from other jurisdictions, *see* Note, Disqualification of Judges for Prejudice or Bias—Common Law Evolution, Current Status, and the Oregon Experience, 48 Or.L.Rev. 311, 332–48 (1969).

filing exists when facts on which the claim of bias rests are not learned until later. *See, e.g., United States v. Townsend,* 478 F.2d 1072 (3d Cir.1973). However, the alleged bias of the judge must stem from an "extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). "Extrajudicial bias" means "a bias that is not derived from the evidence or conduct of the parties that the judge observes in the course of the proceedings." *Johnson v. Trueblood,* 629 F.2d 287, 291 (3d Cir.1980), *cert. denied,* 450 U.S. 999, 101 S.Ct. 1704, 68 L.Ed.2d 200 (1981). Thus, "[n]ormally the judge's rulings at trial do not constitute grounds for recusal because they can be corrected by reversal on appeal." *Id.* Nor is a trial judge's participation in prior proceedings involving the same parties in itself a ground for recusal. *See In re Corrugated Container Antitrust Litigation,* 614 F.2d 958, 965 n. 17 (5th Cir.), *cert. denied sub nom. Mead Corp. v. Adams Extract Co.,* 449 U.S. 888, 101 S.Ct. 244, 66 L.Ed.2d 114 (1980). However, while it is the obligation of the challenged judge to determine whether the affidavit, accepted as true, is sufficient, *Pennsylvania v. International Union of Operating Engineers,* 388 F.Supp. 155 (E.D.Pa. 1974), once the judge determines that the affidavit is sufficient, he loses all jurisdiction. He "shall proceed no further therein, but another judge shall be assigned to hear such proceeding." 28 U.S.C. § 144. " 'If [the judge] finds [the affidavit] to be legally sufficient, then he has no other or further duty to perform than that prescribed .... He is relieved from the delicate and trying duty of deciding upon the question of his own disqualification.' " *Berger v. United States, supra,* 255 U.S. at 32, 41 S.Ct. at 232 (quoting *Henry v. Speer,* 201 F. 869, 872 (8th Cir.1912). Accordingly, if the judge nevertheless does proceed, his order will be set aside. *Peacock Records, Inc. v. Checkers Records, Inc.,* 430 F.2d 85 (7th Cir.1970), *cert. denied* 401 U.S. 975, 91 S.Ct. 1193, 28 L.Ed.2d 324 (1971).

While the federal practice is based on statute, the statute simply embodies the common law principle that no one may be judge of his own cause. Thus in *In re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1954), the United States Supreme Court said:

> A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. This Court has said, however, that "every procedure which would offer a possible temptation to the average man as a judge ... not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law." *Tumey v. Ohio*, 273 US 510, 532, 71 L ed 749, 758, 47 S Ct 437 [444], 50 ALR 1243. Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way "justice must satisfy the appearance of justice." *Offutt v. United States*, 348 US 11, 99 L ed 11, 75 S Ct 11.

*Id.* at 136, 75 S.Ct. at 625.

The same rule pertains in the state courts, with or without a statute. In *Briggs v. Superior Court in and for Los Angeles County*, 215 Cal. 336, 10 P.2d 1003 (1932), there was a statute governing disqualification of a judge for bias or prejudice. The petitioners for a writ of prohibition had been charged with contempt arising out of certain articles appearing in the Los Angeles Record, of which they were the publishers. The contempt proceedings had been instituted by the Los Angeles Bar Association. Petitioners alleged that the trial judge was biased because he had given advice to the bar association, had expressed an opinion on

the merits of the case to the association, and was running for election and seeking the bar association's support, which would be accompanied by financial assistance. In issuing a writ prohibiting the challenged judge from hearing the contempt case, the California Supreme Court said:

If a judge is disqualified as a matter of law, every order entered by him is ... void ... and no reason appears why the parties should be forced to trial before a disqualified judge, only to have the judgment set aside when it later appears that as a matter of law the judge was disqualified.

*Id.* at 341, 10 P.2d at 1005.

For cases where without specific statute or court rule the court has intervened by prohibition or mandamus to prevent a judge charged with bias or prejudice from proceeding to decide the merits of the recusal motion, *see, State ex rel. Ballard v. Jefferson Circuit County Court*, 225 Ind. 174, 175, 73 N.E.2d 489, 490 (1947) ("It is well settled that when an affidavit for change of judge is filed in a proper case, based on the bias and prejudice of the judge, the court has no discretion in the matter."); *Payne v. Lee*, 222 Minn. 269, 271, 24 N.W.2d 259, 264 (1946) (Although disqualification statute does not provide bias as ground for recusal, "If bias is present a probate judge has no power to exercise his jurisdiction."); *Pitman v. Doty*, 441 P.2d 428, 430 (Okl. 1968) ("where there are circumstances of such nature as to cause doubts as to a Judge's partiality, bias or prejudice, it is his duty to disqualify, notwithstanding the fact that he personally believes himself to be unprejudiced."); *State ex rel. Smith v. Wilcoxen*, 312 P.2d 187, 188 (Okl.Cr.App.1957) (mandamus issued where judge was to be a material witness, with court stating: "Under such conditions, this court might become an instrument of impediment to the ends of justice if we did not sustain the petition."); *Stern Brothers, Inc. v. McClure*, 236 S.E.2d 222, 225 (W.Va.1977) ("It appears to be the general rule that a judge before whom a disqualification motion is filed should not hear the merits of the motion."); *Price v. Sturgiss*, 82 W.Va. 523, 524, 97 S.E.

193 (1918) (writ of prohibition granted where judge would have been a material witness, with court stating, "As the petition is verified, its averments must be deemed sufficient to establish prima facie grounds for the preemptory writ prayed for."); *Leonard v. Willcox*, 101 Vt. 195, 142 A. 762 (1928) (Judge admitted bias from bench). *See also North Carolina National Bank v. Gillespie*, 291 N.C. 303, 311, 230 S.E.2d 375, 380 (1976) ("[W]hen the trial judge found sufficient force in the allegations contained in defendant's motion to proceed to find facts he should have either disqualified himself or referred the matter to another judge before whom he could have filed affidavits in reply or sought permission to give testimony."); *McClendon v. Clinard*, 38 N.C.App. 353, 247 S.E.2d 783, 785 (1978) (judge should not have ruled on recusal motion; "a reasonable man knowing all the circumstances would have doubts about the judge's ability to rule on the motion to recuse in an impartial manner.").

It is argued to us, by plaintiff's counsel and by counsel representing the trial judge, that under Pennsylvania law the trial judge was entitled to hear testimony on the truth or falsity of the allegations in the Lipson affidavit, and to refuse to permit Cohen to testify as the offer of proof and her affidavit said she would. We find no merit in this argument; to accept it would be to hold that Pennsylvania law countenanced a procedure contrary to our most fundamental concepts of fairness. *In re Murchison, supra; Bonham's Case, supra.*

Many of the Pennsylvania cases [10] addressing the question of a trial judge's disqualification are inapposite, for

**10.** There is no controlling statute or rule of court. Rule 1006(d)(2) of the Pennsylvania Rules of Civil Procedure provides:

(2) Where, upon petition and hearing thereon, the court finds that a fair and impartial trial cannot be held in the county for reasons stated of record, the court may order that the action be transferred. The order changing venue shall be certified forthwith to the Supreme Court, which shall designate the county to which the case is to be transferred.

Note: For the recusal of the judge for interest or prejudice, see Canon 3C of the Code of Judicial Conduct.

they involved situations in which the evidence was insufficient to support a claim of bias. *See, e.g., Commonwealth v. Darush, supra* (vague, unsubstantiated hearsay references insufficient); *Commonwealth v. Perry, supra* 468 Pa. at 526, 364 A.2d at 318 ("one who asserts that a trial judge should be disqualified must produce some evidence of the necessity for that disqualification;" acquaintance with victim insufficient); *Commonwealth v. Council*, 491 Pa. 434, 421 A.2d 623 (1980) (appellant failed to sustain burden of showing prejudice; trial judge stated on record that he had disregarded prejudicial evidence); *Commonwealth v. Strunge*, 287 Pa.Super. 212, 429 A.2d 1176 (1981) (appellant failed to show prejudice when trial judge's alleged biased statement made at prior bail hearing was not known to jury); *Commonwealth v. Conrad, supra* (trial judge's discussion with witness's father insufficient to show prejudice). These cases only illustrate what we have already discussed—that a judge whose impartiality has been ques-

Pa.R.Civ.P. 1006(d)(2).
This may be read as contemplating that a hearing will be held on a motion ("petition") for recusal but, as is apparent, it is silent as to whether the challenged judge may himself conduct the hearing. In *Little v. Wyoming County*, 214 Pa. 596, 599, 63 A. 1039, 1040 (1906), a case decided under the Act of March 30, 1875, as amended, 12 P.S. § 111 *et seq.* (Purdon's 1953), repealed by the Judiciary Repealer Act, Act of July 9, 1976, P.L. 586, 42 Pa.C.S.A., § 20002(a) [657], the Court stated:

> The question in every case under the first section of the act [of March 30, 1875] is, therefore, not whether the grounds or reasons assigned are sufficient to warrant a change of venue in the opinion or judgment of the court, but whether the applicant has brought himself within any of the causes for which the legislature has determined that a change shall be made. If he has, the court is required to grant the application regardless of the opinion it may entertain as to the propriety of doing it.

*See also Willoughby v. Buffalo Rochester & Pittsburgh Railway Co.*, 203 Pa. 243, 247, 52 A. 188, 189 (1902) ("If the evidence is sufficient, the question of fact alleged in the petition should have been found by the trial judge, and when found, it was the duty of the court to award a change of venue."); *Brittain v. Monroe County*, 214 Pa. 648, 651, 63 A. 1076, 1077 (1906) ("when the applicant makes oath that local prejudice exists it is conclusive on the court."). These cases are at least consistent with the proposition, if they do not hold, that a judge whose impartiality has been challenged must take the allegations of bias and prejudice as true in determining their sufficiency.

tioned must initially decide the sufficiency of the allegations in the recusal motion. They are in no way inconsistent with the point at issue here—that when the allegations *are* sufficient, as the Cohen allegations clearly were, the judge may not himself rule upon them but must refer the motion to another judge for hearing.

Some cases contain general language to the effect that a trial judge's decision not to recuse himself will not be reversed absent an abuse of discretion. *See, e.g., Commonwealth v. Darush, supra* (citing *Commonwealth v. Kane,* 199 Pa.Super. 89, 184 A.2d 405 (1962); *Commonwealth v. Council, supra; Commonwealth v. Perry, supra.* This language, however, is not to be understood as authorizing the judge to rule upon allegations sufficiently challenging his impartiality. No doubt the judge has some room for the exercise of discretion in deciding whether the allegations, if true, *do* sufficiently challenge his impartiality. But if the allegations *are* sufficient, room for discretion disappears. Then the judge "has no other or further duty to perform." *Berger v. United States, supra.* Thus, in *Crawford's Estate, supra,* where the language regarding the judge's discretion appears to have originated, the Supreme Court said:

> The proper practice on a plea of prejudice is to address an application by petition to the judge before whom the proceedings are being tried. *He may determine the question in the first instance* and ordinarily his disposition of it will not be disturbed on appeal.

*Id.* 307 Pa. at 108, 160 A. at 587 (emphasis added).

Some further comment on *Crawford's Estate* is, however, necessary. There, the question was whether the trial judge, Judge PARKER, should have been disqualified from making a fee award to the representative of the beneficiaries of Crawford's will. The beneficiaries were the fatherless children of France, and the judge had expressed an interest in aiding the children of France; this was taken by the representative as indicating that he would not receive a fair fee. The judge voluntarily submitted the question of

his disqualification to another judge, who found no evidence of prejudice. In the course of its opinion, the Supreme Court observed that, while on the one hand, "the principle of judicial impartiality, disinterestedness, and fairness" required that courts "as near as possible [should] be above suspicion," on the other hand, "causes [should] not be unfairly prejudiced, unduly delayed, or discontent created through unfounded charges of prejudice or unfairness made against the [trial] judge." *Id.*, 307 Pa. at 108, 160 A. at 587. The Court continued:

> If the judge feels that he can hear and dispose of the case fairly and without prejudice, his decision will be final unless there is an abuse of discretion. This must be so for the security of the bench and the successful administration of justice. Otherwise, unfounded and ofttimes malicious charges made by bold and unscrupulous advocates might be fatal to a cause or litigation might be unfairly and improperly held up awaiting the decision of such a question or the assignment of another judge to try the case .... If the judge wishes a full exposition of the question of unfairness, he may follow the unusual practice of Judge PARKER and summon another judge to decide it, but he is not required to do so.

*Id.*, 307 Pa. at 108–09, 160 A. at 587.

If one reads no further than this, one might suppose the Supreme Court to be saying that "the security of the bench and the successful administration of justice" permitted a judge, in his discretion, to be the sole judge of the truth or falsity of allegations that he was biased or prejudiced—in any case, and no matter what the allegations were. We are convinced, however, that such an interpretation would be mistaken. For it would amount to saying that a judge *could* be judge of his own cause, which would not preserve but would destroy "the security of the bench and the successful administration of justice." If "bold and unscrupulous advocates" seek to delay a cause by making "unfounded" or "malicious" charges against a trial judge, they may readily be punished, by punishments that may include

conviction for perjury and disbarment. A judge may not himself engage in improper conduct, by judging his own cause, because advocates appearing before him have engaged in improper conduct.

We are confirmed in our conviction that the *dictum* we have quoted from *Crawford's Estate* is not to be read literally by considering the passage that immediately follows it:

> When a charge of disqualification is made against a trial or hearing judge, the party must produce evidence which has a tendency to show bias, prejudice or unfairness. To sustain the charge, the exceptant is not limited to the instant case, but he may show personal ill will to client or counsel, or temperamental prejudice on the particular class of litigation involved, or any other recognized ground. The charge of disqualification is serious and should not be made lightly or frivolously. Yet the suitors and counsel should be free of embarrassment in making such charge when just ground exists; and where the judge whose fairness has been challenged submits the case to the determination of another judge, the door is thrown open for proof of the charges as it would be if he had heard the case.

*Id.*, 307 Pa. at 109, 160 A. at 587.

The only logical interpretation of this is as meaning that when the charge of disqualification is not "frivolous," *i.e.*, when "just ground [for the charge] exists," then the charge must be referred for hearing to another judge, for only if that is done will "the suitors and counsel ... be free of embarrassment in making [the] charge." And indeed, such a statement is plainly correct, and is consistent with the authorities we have discussed. For if the evidence of bias were evaluated by the judge charged with being biased, then the "suitors and counsel" most certainly would *not* be "free of embarrassment;" they would be denied a fair hearing. *In re Murchison, supra.*

Similarly, *United States Steel Corporation v. Papadakos,* 63 Pa.Cmwlth. 213, 437 A.2d 1044 (1981), is consistent

with the authorities we have discussed. There the Commonwealth Court declined to issue a writ of prohibition. The case involved assessments against the steel company, and the trial judge assigned to hear the case had made public statements interpreted by some as indicating a desire to see the assessments increased. The situation presented, therefore, was unlike the situation presented here. There was no issue of credibility arising from possibly conflicting evidence; the judge did not deny his pre-trial statements. His refusal to recuse himself amounted only to a statement that despite his pre-trial statements, he would be impartial—in other words, to a decision that the reasons alleged in support of recusal were insufficient. As we have discussed, the challenged judge must always make the initial decision on the sufficiency of the allegations of bias and prejudice. He exceeds his jurisdiction only if, in the face of sufficient allegations, he proceeds to rule upon the motion. Since the trial judge in *United States Steel* in deciding on the sufficiency of the allegations did not exceed but acted within his jurisdiction, the Commonwealth Court's decision not to issue a writ of prohibition was correct, and consistent with authority.

Nevertheless, having said this much, we feel obliged to add that the Commonwealth Court's opinion in *United States Steel* contains some statements with which we disagree. First, the court characterizes the decision whether to recuse oneself as "discretionary." *Id.*, 63 Pa.Cmwlth. at 215, 437 A.2d at 1046. As we have discussed, however, once it appears that the allegations of bias and prejudice are sufficient, discretion disappears and the challenged judge must refer the recusal motion to another judge for hearing. And second, the court states that "[t]he question of jurisdiction is resolved by examining the authority of the tribunal, not the individuals who compose it." *Id.*, 63 Pa.Cmwlth. at 217, 437 A.2d at 1046. However, while a tribunal may have jurisdiction over a matter, a judge of that tribunal may nevertheless exceed the jurisdiction vested in him as a judge of that tribunal. Thus in *Schlesinger Petition, supra,* the

tribunal—the court of common pleas—had jurisdiction to hear the action, but the judge assigned to hear the action nevertheless exceeded his jurisdiction in inquiring whether counsel was a member of the Communist Party, with the result that the Supreme Court issued a writ of prohibition.

■ In conclusion, then: We acknowledge that no Pennsylvania case appears to have ruled explicitly on the issue before us. To that extent, this case is a case of first impression. Nevertheless, we have found no decision that persuades us that the law in Pennsylvania is—or, given considerations of fundamental fairness, even could be—different from the law as we have found it in other jurisdictions. We therefore hold: When a motion for recusal is filed, the challenged judge must first decide the sufficiency of the allegations of bias and prejudice. In making this decision, the judge must take the allegations as true. If on the basis of the allegations, taken as true, the judge's impartiality might reasonably be questioned, the judge must refer the recusal motion to another judge for hearing. If instead the judge hears the motion himself, he exceeds his jurisdiction.

■ Here, if the Cohen allegations are taken as true, the trial judge's impartiality may indeed reasonably be questioned. The trial judge was therefore required to refer defendants' recusal motion, in support of which the Cohen allegations were made, to another judge for hearing. By instead ruling that he would not admit any evidence in support of the allegations but would himself rule upon the motion, on the basis of evidence that he considered admissible, and the credibility of which he would appraise, the trial judge exceeded his jurisdiction.

(b)

Having concluded that the trial judge exceeded his jurisdiction, we must next consider whether there is any adequate remedy for the excess other than issuing a writ of prohibition, that is to say, whether the second common law condition for issuing the writ has been satisfied. It was

argued to us, on behalf of plaintiff and the trial judge, that the second condition has not been satisfied. Instead of issuing the writ, it was urged, we must await the trial judge's decision on defendants' recusal motion and exceptions; if the judge denies the recusal motion and exceptions, only then, on defendants' appeal from the ensuing judgment, may we decide whether in hearing the recusal motion the judge exceeded his jurisdiction. This argument has no merit. For us to require, and await, an appeal would serve no useful purpose; it would result in distortion of the appellate process; and it would further cast doubt upon the integrity of the judicial process that has already occurred in this case.

An appeal would serve no useful purpose because we know now, without awaiting the outcome of any further proceedings, that the trial judge exceeded his jurisdiction. This is not a case where a petition for writ of prohibition is premature because the trial court has not yet had an opportunity to consider its own jurisdiction. *See Spykerman v. Levy*, 491 Pa. 470, 421 A.2d 641 (1980) (court of common pleas had not yet had chance to consider objection to its jurisdiction and Supreme Court had no basis for assuming that it would erroneously assert jurisdiction); *Carpentertown Coal & Coke Co. v. Laird, supra* (Commission had not yet had opportunity to consider its jurisdiction and it could not be assumed that it would act if its lack of jurisdiction were established). Here the trial judge has already considered whether he has jurisdiction, and he has held that he does. On May 4, 1983, he vacated his order sending the recusal motion to Motions Court, and he has since presided at the hearing on the motion, receiving evidence regarding the truth and falsity of the allegations of bias and prejudice, and ruling on the admissibility of evidence in support of the Cohen allegations, offered in support of the motion. Nor is this a case where one can have any doubt on the jurisdictional issue. *Cf. Akron Borough v. Pennsylvania Public Utility Commission, supra* (PUC assertion of power could not be labeled clearly

erroneous when jurisdictional question was difficult and of first impression); *Petition of Specter, supra* (validity of subpoena involved questions of fact, which could be addressed in contempt proceedings); *Robertshaw Controls Co. v. Commonwealth*, 67 Pa.Cmwlth. 613, 447 A.2d 1083 (1982) (whether PHRC had jurisdiction involved factual issues not yet decided by PHRC). A clearer case of excess of jurisdiction than this one would be hard to imagine; even *Schlesinger Petition, supra*, is no clearer.

Moreover, to require an appeal would result in distortion of the appellate process. When a judge sits as the finder-of-fact, his findings are ordinarily overturned on appeal only if they are unsupported by competent evidence in the record. *Brenna v. Nationwide Insurance Co.*, 294 Pa.Super. 564, 440 A.2d 609 (1982). On appeal the evidence is viewed in the light most favorable to the prevailing party and all inferences unfavorable to that party are rejected. *Id.* This is especially true where the findings of fact depend on the trial judge's assessment of the witnesses' credibility. *Brentwater Homes, Inc. v. Weibley*, 471 Pa. 17, 369 A.2d 1172 (1977). In addition, as a general rule the trial judge's denial of a request, either to offer rebuttal evidence or to reopen a case to present newly discovered evidence, will be regarded as a decision within the judge's discretion, and will be reversed on appeal only if the judge abused his discretion. *See In re J.E.F.*, 487 Pa. 455, 409 A.2d 1165 (1979); *Commonwealth v. Deitch*, 449 Pa. 88, 295 A.2d 834 (1972). Here, these normal standards of appellate review have all been rendered inappropriate by the trial judge having acted as judge of his own cause. This alone renders defendants' right to appeal an inadequate remedy, and requires issuance of a writ of prohibition now. As the United States Supreme Court has explained in *Berger v. United States, supra*, in holding that once it appears that the allegations of bias and prejudice are sufficient, the challenged judge must proceed no further:

[T]he reason is easy to divine. To commit to the judge a decision upon the truth of the facts gives chance for the

evil against which the section is directed. *The remedy by appeal is inadequate.* It comes after the trial, and if prejudice exists, it has worked its evil and a judgment of it in a reviewing tribunal is precarious. It goes there fortified by presumptions and nothing can be more elusive of estimate or decision than a disposition of a mind in which there is a personal ingredient.

*Id.* 255 U.S. at 36, 41 S.Ct. at 234 (emphasis added). Should we require an appeal, we should place ourselves in precisely the "precarious" position described by the Supreme Court. For we should be obliged by the normal standards of appellate review to defer to the trial judge's findings of fact and rulings on the admissibility of evidence, knowing all the while that the judge's impartiality had been questioned and that he should not have ruled upon it. Thus, against our will and unable to change course, we should ourselves be unable to satisfy that appearance of impartiality that "to perform its high function in the best way 'justice must satisfy .... ' " *In re Murchison, supra* 349 U.S. at 136, 75 S.Ct. at 625, quoting *Offutt v. United States,* 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954). *And see Green v. Murphy,* 259 F.2d 591, 594 n. 4 (3d Cir.1958) (interpreting *Berger* ); *Korer v. Hoffman,* 212 F.2d 211 (7th Cir.1954) (interpreting *Berger* ).

Finally, to require an appeal would further cast doubt upon the integrity of the judicial process that has already occurred in this case. No finding of liability or award of damages in the underlying controversy, *i.e.,* the libel action, should have been made while the recusal motion remained undecided, and no one can retain any faith in the proceedings below when the trial judge is acting as fact-finder in a proceeding in which his own conduct is at issue. This is not a case in which the challenge to the inferior tribunal's jurisdiction does not involve the presiding judge's own conduct, but, rather, involves matters on which the tribunal is competent to rule. *See, e.g., Robertshaw Controls Co. v. Commonwealth, supra* (challenge to jurisdiction of PHRC); *Spykerman v. Levy, supra* (challenge to jurisdiction of

court of common pleas to fill vacancy on board of supervisors); *Akron Borough v. Pennsylvania Public Utility Commission, supra* (challenge to power of PUC to order municipality to provide water service beyond its certificated extraterritorial service area); *Carpentertown Coal & Coke Co. v. Laird, supra* (challenge to jurisdiction of State Mining Commission). In such cases, the tribunal's assertion of jurisdiction, even if erroneous, does not taint the judicial process. Rather, this case is similar to *Schlesinger Petition, supra,* where, as here, the challenged actions were of such a character as to taint the entire proceedings and to demand correction at the earliest possible time. *Cf. Rosen v. Sugarman,* 357 F.2d 794 (2d Cir.1966) (few situations are more appropriate for mandamus than a judge's clearly wrongful refusal to disqualify himself); *In re Union Leader Corp.,* 292 F.2d 381 (1st Cir.) *cert. denied,* 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961) (claim of bias of trial judge was sufficiently meritorious to warrant consideration upon petition for writ of mandamus; public confidence in courts and proper administration of justice required that question be disposed of at earliest opportunity); *Gladstein v. McLaughlin,* 230 F.2d 762 (9th Cir.1955) (mandamus is proper remedy for judge's wrongful failure to recuse himself; otherwise record on appeal would be made up by judge known to be prejudiced and could be infected with his prejudice).

In conclusion, then: defendants' appellate remedy is inadequate because this case involves a clearly erroneous assertion of jurisdiction, which casts doubt upon the integrity of all the judicial proceedings below, and which should therefore be remedied at the earliest possible time.

–4–

██ It appearing that both of the common law conditions for the issuance of a writ of prohibition have been satisfied, it only remains to consider whether the Supreme Court's order of May 27, 1983, precludes issuance of the writ. This issue may be disposed of summarily.

It will be recalled from our statement of the facts that the Supreme Court's order of May 27 stated: "Petitioners [defendants] having failed to demonstrate that their appellate remedies are inadequate, the petition [for writ of prohibition] is denied." In determining the effect of this order, we must look to the facts before the Court when the order was entered. *See Schenley Farms Co. v. Allegheny County*, 349 Pa. 637, 37 A.2d 554 (1944) (prior judgment was not conclusive as to objections that could not possibly have been made at that time). *See also* Restatement (Second) of Judgments (1982) § 13 Comment c (res judicata consequences of judgment may be affected by material change in circumstances after the judgment). *Cf.* Annot., 21 A.L.R.3d 206, 252 § 16 (1968) (collecting cases in which subsequent petition for writ of prohibition was held barred by denial of prior petition that sought same relief against same parties on same facts).

At the time of the Supreme Court's order, the Court had before it the trial judge's order of May 4, setting defendants' recusal motion down for hearing on May 23 before himself. It was therefore clear, when the Supreme Court entered its order on May 27, that the trial judge intended to hear, and in fact had started to hear, the recusal motion. It was by no means clear, however, that the judge would act as finder-of-fact regarding the truth or falsity of the allegations of bias and prejudice, and that he would make rulings prohibiting the introduction of evidence in support of the allegations of bias and prejudice, *i.e.*, the Cohen allegations. Not only did the Supreme Court not know that the trial judge would engage in such conduct, but it could not know. The Cohen allegations were not made until July 14. When the Supreme Court entered its order on May 27, it was entitled to assume that the trial judge was proceeding, and would continue to proceed, according to law, that is to say, that the judge was inquiring only into the sufficiency of the hearsay allegations made in the Lipson affidavit. Thus it could not appear to the Supreme Court either that the trial judge had exceeded or that he would exceed his jurisdiction.

The Court therefore properly denied defendants' petition for writ of prohibition: defendants had satisfied neither of the common law conditions for issuance of the writ, having shown neither lack or excess of jurisdiction, nor (as the Court observed in its order) that their appellate remedies were inadequate. Later, however, the conditions for issuance of the writ were satisfied, when, in particular, on July 14 the trial judge prohibited the introduction of evidence in support of the Cohen allegations, even though those allegations, taken as true, were a more than sufficient basis on which the judge's impartiality might reasonably be questioned. Were we to hold that the Supreme Court's order of May 27 precluded relief for events that did not occur until July 14, we should give the Court's order an effect that the Court could not have intended.

We therefore enter the following

## ORDER

PER CURIAM:

AND NOW, this 30th day of November, 1983, in the case of James Reginald Edghill v. Municipal Publications, Inc., D. Herbert Lipson, and Alan Halpern, No. 2371, May Term, 1972, Philadelphia County Court of Common Pleas, on defendants' petition for writ of prohibition:

1. The trial judge, the Honorable Bernard Snyder, is prohibited from proceeding on defendants' recusal motion, or otherwise in this case until the recusal motion has been decided; and

2. The President Judge of the trial court, the Honorable Edward J. Bradley, is directed to request the Supreme Court to refer the recusal motion to a judge from a county other than Philadelphia for hearing.

BROSKY, J., files a concurring opinion.

BROSKY, Judge, concurring:

I concur in the result reached by the majority but I have reservations about the majority's finding that the lower court judge is without jurisdiction over the recusal motion.

While I do not perceive the Honorable Judge Snyder as the trial Judge to have acted in excess of his jurisdiction, I certainly agree that he should not have acted as he did in conducting the hearing on the recusal motion. The propriety of his actions is, however, different than his power to act and it is this difference that causes me to write separately.

The majority would conclude that Judge Snyder had jurisdiction to determine the sufficiency of the allegations made by petitioners below, but that upon a finding that the allegations would be sufficient, if true, to cause his recusal, the judge would no longer have jurisdiction to entertain the motion. This notion of jurisdiction as resting in an individual jurist, as opposed to a tribunal, is one with which I cannot agree. In this regard, I believe that the Commonwealth Court correctly noted in *U.S. Steel v. Papadakos*, 63 Pa. Cmwlth. 213, 437 A.2d 1044, 1046 (1981) that "[t]he question of jurisdiction is resolved by examining the authority of the *tribunal* not the individuals who compose it." (emphasis in original). Moreover, even assuming *arguendo* that the jurisdiction of Judge Snyder were different than that of other members of the Common Pleas Court, I am unable to subscribe to the view that his jurisdiction exists only until a certain quantum of evidence is amassed at which time it shifts to another judge.

I would, however, issue the writ of prohibition. This is so because I believe that our Supreme Court has indicated that the writ can be used in cases in which there is "extreme necessity for the relief requested to secure order and regularity in judicial proceedings", even though the lower court has jurisdiction or the power to act as it did.

As the majority clearly explains, traditionally a writ of prohibition would issue only if the lower court acted without jurisdiction. In *Carpentertown Coal & Coke Co. v. Laird,*

360 Pa. 94, 61 A.2d 426 (1948), our Supreme Court explained that the principal purpose of the writ is to prevent an inferior judicial tribunal from assuming a jurisdiction with which it is not legally vested in cases where damage and injustice would otherwise be likely to follow from such action.

In *Commonwealth ex rel. Specter v. Shiomos,* 457 Pa. 104, 320 A.2d 134, 136 (1974) the Supreme Court held that in *Carpentertown* it had established a two-prong test to be used in determining whether the writ should be issued. The test is:

The first aspect of the test is whether adequate remedies are provided at law to afford relief.

.  .  .  .  .

The second prong of the test is whether there is extreme necessity for the relief requested to secure order and regularity in judicial proceedings.

As early as 1963 our Supreme Court indicated that a writ of prohibition could be used to prevent the enforcement of a lower court order which directed the District Attorney to turn over to a defendant certain information. In *Commonwealth v. Caplan,* 411 Pa. 563, 192 A.2d 894 (1963) the Court found that the record indicated that the lower court had issued a discovery order without the evidence necessary to compel discovery. No suggestion was made that the lower court lacked jurisdiction to compel discovery, but rather that it did so erroneously. The court noted that the cases were not in accord as to the extent or limitation of a writ of prohibition, but found authority to issue it based on its plenary powers. While the exercise of such plenary powers over all inferior tribunals does not rest with this court, the *Caplan* opinion is instructive in that in order to alleviate further confusion as to the extent or limitations of the writ, the court expressly overruled its earlier decision in *Commonwealth v. Mellon National Bank & Trust Co.,* 360 Pa. 103, 61 A.2d 430 (1948).

In *Mellon,* 360 Pa. at 112, 61 A.2d at 435 the Court held: "Since the Court below was acting within its jurisdiction

when it directed that the subpoena issue, this record presents no case for a writ of prohibition." The *Mellon* opinion, had explained at some length that where the general scope and purpose of the action is within the jurisdiction of the court any error was to be the subject of appeal and not cause for the issuance of a writ of prohibition.

I interpret the express overruling of *Mellon* in a case in which the Supreme Court said it would entertain a petition for writ of prohibition, raising non jurisdictional grounds as an implied abandonment of the requirement that the lower court have acted without jurisdiction in order for a writ of prohibition to issue. See also *Lepley v. Lycoming County Court of Common Pleas*, 481 Pa. 565, 570 n.3, 393 A.2d 306, 308 n. 3 (1978) (Public concern, particularly in the field of criminal law, with respect to proper order and regularity in judicial proceedings may call for use of the writ), *Pirillo v. Takiff*, 462 Pa. 511, 341 A.2d 896 (1975) (Writ is issued as a matter of discretion to prevent a lower court from acting outside its jurisdiction and to prevent it from abusing its discretion... It is often used where the trial judge has acted in a blatantly unlawful manner.) [1]

I conclude that the writ should issue since it is necessary to secure order, impartiality, fairness and regularity in these judicial proceedings. I also believe, as the majority does, that petitioners are without an adequate remedy at law. Public confidence in the judicial system is certainly eroded when a judge acts as judge in his own cause. Knowing as we do that the lower court judge should not proceed further in this matter, we cannot fail to act.

[1] "The Supreme Court of Pennsylvania recently has supplanted the traditional inquiry of a prohibition proceeding into the inferior court's jurisdiction with a two-legged test in which the adequacy of other remedies and the necessity of the circumstances are the determinative criteria".
Comment, "the Writ of Prohibition in Pennsylvania," 80 Dick.L.Rev. 472, 483 (1976) (footnotes omitted).
"Most significantly, the court no longer strictly adheres to the rule demanding a lack of jurisdiction as a prerequisite to issuance of a prohibitory writ." 80 Dick.L.Rev. 499.